413 F.2d 349
 H. D. MOLLOHAN and Birdie Mollohan, husband and wife, M. S.
Horne and Ed Cudahy, doing business as Eagle Tail
Ranch, Appellants,
v.
Warren J. GRAY, District Manager, Phoenix District Office,
Bureau of Land Management, Department of the Interior of the
United States, and Stewart L. Udall, Secretary of the
Interior of the United States of America, Appellees.
 No. 22699.
 United States Court of Appeals Ninth Circuit.
 June 17, 1969.
 
 Wallace O. Tanner (argued), of Tanner, Jarvis & Owens, Phoenix, Ariz., for appellants.
 Jacques B. Gelin (argued), Clyde O. Martz, Asst. Atty. Gen., Raymond N. Zagone, Atty., Dept. of Justice, Washington, D.C., Edward E. Davis, U.S. Atty., Richard S. Allemann, Asst. U.S. Atty., Phoenix, Ariz., for appellees.
 Before DUNIWAY and CARTER, Circuit Judges, and JAMESON,* District judge.
 JAMES M. CARTER, Circuit Judge.
 
 
 1
 Appellants brought this action in the Arizona District Court to review and reverse a decision of the Secretary of the Interior affirming the partial cancellation of their grazing allotments. The district court granted appellees' motion for summary judgment and dismissed appellants' action on the merits; the question of lack of jurisdiction was apparently not raised or argued below. Appellants now appeal, and we affirm the district court's dismissal of their action.
 
 
 2
 The appeal presents two questions: 1) Did the district court have jurisdiction to review the administrative decision under the Administrative Procedure Act (5 U.S.C. 701 et seq.) or the federal mandamus statute (28 U.S.C. 1361)? 2) Assuming the district court did have jurisdiction, did it properly dismiss appellants' action?
 
 
 3
 Some time prior to 1952, the Department of the Interior had granted the appellants and their predecessors in interest (referred to herein collectively as appellants) annual grazing permits authorizing them to use portions of the federal range pursuant to the Taylor Grazing Act (43 U.S.C. 315 et seq.). Since the general area is exceptionally dry and the range lacks available feed, for most years prior to 1952 appellants had applied for and received non-use permits or licenses to preserve their rights.[1] On July 1, 1952, Public Land Order 848 (17 Fed.Reg. 6099 (1952) withdrew certain land for military purposes (the Yuma Test Station in Arizona), including part of the land authorized to be used by appellants. Pending the need for actual use by the Army, annual permits continued to be issued to appellants.
 
 
 4
 In 1958 the United States instituted a condemnation action to acquire a leasehold estate in the area withdrawn for the use of the Yuma Test Station. On September 15, 1959, the District Manager notified appellants that so much of their grazing lands as were located within the withdrawn area would be cancelled from their allotments at the expiration date of their existing permits; at that time appellants were holders of annual non-use permits running from July 1, 1959 to June 30, 1960. Accordingly, on July 14, 1960, the District Manager notified appellants that partial cancellation of their grazing allotments (the area within the Yuma Test Station) had become effective. Appellants challenged the District Manager's action by appeal to the Bureau of Land Management; the Hearing Officer affirmed the decision. On further administrative appeals to the Director of the Bureau and to the Secretary of the Interior, the decision was again affirmed. Appellants then brought this action in the district court under the Administrative Procedure Act, 5 U.S.C. 702 (formerly 1009), to review the administrative decision.
 
 I.
 
 5
 At the outset, appellees contend the Administrative Procedure Act does not grant the district court jurisdiction because the Administrative Procedure Act is not a waiver of sovereign immunity or a jurisdictional consent to sue the Secretary of the Interior. Since we believe, as will be later shown, that the Secretary's decision in the case at bar is expressly non-reviewable under the provisions of the Administrative Procedure Act, we need not pass on this contention.[2]
 
 
 6
 The Administrative Procedure Act specifically exempts from its operation cases where 'agency action is committed to agency discretion by law' (5 U.S.C. 701(a) (2)); in such cases the provisions of the Act providing for judicial review are inapplicable. Schilling v. Rogers, 363 U.S. 666, 670, 676, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); Ferry v. Udall, 336 F.2d 706, 711-713 (9 Cir. 1964), cert. denied, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965); United States v. Walker, 409 F.2d 477 (9 Cir. 3/27/69); see also, Davis, Administrative Law, 28.16 (Supp.1965). Although some degree of agency discretion is present in most agency action, the court in Ferry v. Udall, supra, drew a distinction between 'permissive type' statutes and 'mandatory type' statutes. With a mandatory type statute, administrative discretion is limited to deciding whether the statutory requirements have been met; if they are met, the Secretary must take certain action. With a permissive type statute, even where an applicant meets all of the statutory requirements, the Secretary still has discretion to refuse to act. Discretionary action under a permissive type statute is exempted from judicial review under the Administrative Procedure Act.[3]
 
 
 7
 The Taylor Grazing Act gives the Secretary of the Interior broad powers to 'make such rules and regulations * * * and do any and all things necessary' to regulate the use and occupancy of grazing districts (43 U.S.C. 315a). He is authorized, but not required 'to issue or cause to be issued' grazing permits to such persons 'as under his rules and regulations are entitled to participate in the use of the range' (43 U.S.C. 315b). In light of these provisions, we believe the Taylor Grazing Act is a permissive type statute; issuance or non-issuance, including refusal to renew or cancellation, is committed to agency discretion by the statute.[4] Sellas v. Kirk, 200 F.2d 217 (9 Cir. 1952), cert. denied, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 (1953) involved the Taylor Grazing Act and held it to be a permissive type statute. Thus, the administrative decision involved in the case at bar is exempted from judicial review under the Administrative Procedure Act. We therefore hold that the district court lacked jurisdiction under the Administrative Procedure Act.[5]
 
 
 8
 There was also no jurisdiction under the federal mandamus statute (28 U.S.C. 1361). Mandamus is proper only to command an official to perform a ministerial act; as shown above, there is in this case no mandatory duty imposed on the Secretary to issue, renew, or not cancel grazing permits under the Taylor Grazing Act. Mandamus is therefore not available in this type of case. United States v. Walker, supra.
 
 II.
 
 9
 Although we regard our holding as to lack of jurisdiction to be dispositive of the case at bar, we also believe that even assuming the district court properly took jurisdiction, the court properly dismissed appellants' action.
 
 
 10
 Appellants mainly argue that Public Land Order 848 cannot provide a legal basis for cancellation of their grazing allotments because it was superseded by Public Law 85-337, 2 (72 Stat. 28, 43 U.S.C. 156), effective February 28, 1958, which provides that no withdrawals in excess of 5000 acres can be made by the military without Congressional approval. Appellants also argue that the 1958 condemnation action and other acts by the government constituted an express recognition of their (appellants') rights.
 
 
 11
 We agree with the district court that the 1952 land order was valid and was not affected by the 1958 statute which operated only prospectively. The land for the Yuma Test Station was validly withdrawn in 1952, even though appellants' grazing allotments were not formally partially cancelled until eight years later. Moreover, we do not believe the government's filing of the condemnation action to perfect title or any other act of the government can be construed as recognition of any specific rights of appellants. The initiation of a condemnation action constitutes neither the admission of any rights in others, nor the waiver of any rights of the government. United States v. 93.970 Acres, 360 U.S. 328, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959).
 
 
 12
 Furthermore, grazing permits issued under the Taylor Grazing Act are discretionary with the Secretary and do 'not create any right, title, interest, or estate in or to the lands' (43 U.S.C. 315b). Thus, the permits confer upon the recipients a mere privilege to graze livestock, and this privilege may be withdrawn by the United States without payment of compensation.[6] Osborne v. United States, 145 F.2d 892 (9 Cir. 1944); Acton v. United States, 401 F.2d 896, 899-900 (9 Cir. 1968). The Secretary or his delegate had the authority to refuse to renew appellants' nonuse permits and cancel their grazing allotments within the withdrawn area; he did not abuse his discretion or deny any of appellants' rights by doing so.
 
 
 13
 Although we believe the case at bar should have been dismissed for lack of jurisdiction rather than on the merits, the district court reached the right result. The judgment of the district court dismissing the action is therefore
 
 
 14
 Affirmed.
 
 
 
 *
 Hon. William J. Jameson, United States District Judge, District of Montana, sitting by designation
 
 
 [1]
 The gross acreage of the grazing permits or the non-use permits is referred to in the record as the 'allotment' to each appellant
 
 
 [2]
 Converse v. Udall, 399 F.2d 616, 618 (9 Cir. 1968), cert. denied, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569 (1969), appears to be contrary to appellees' contention. The court in Converse relied on Adams v. Witmer, 271 F.2d 29, 32-33 (9 Cir. 1958) and part of the opinion in Coleman v. United States, 363 F.2d 190, 194 (9 Cir. 1966), rev'd on other grounds, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968). Appellees argue Converse is wrong and its reliance on Adams and Coleman is misplaced. This issue is currently pending before this court in Washington v. Udall, (No. 22413, submitted 3/11/69)
 
 
 [3]
 However, as pointed out by the court in Schilling v. Rogers, supra at 676-677, 80 S.Ct. at 1295:
 'This is not a case in which it is charged either that an administrative official has refused or failed to exercise a statutory discretion, or that he has acted beyond the scope of his powers, where the availability of judicial review would be attended by quite different considerations than those controlling here.'
 
 
 [4]
 There is an exception in 43 U.S.C. 315b, as follows:
 '* * * except that no permittee complying with the rules and regulations laid down by the Secretary of the Interior shall be denied the renewal of such permit, if such denial will impair the value of the grazing unit of the permittee, when such unit is pledged as security for any bona fide loan.'
 There are no facts in this case which bring it within the above exception.
 
 
 [5]
 This holding is consistent with this court's decisions in Ferry v. Udall, supra, and United States v. Walker, supra, since those cases involved permissive type statutes. This court's decisions in Adams v. Witmer, supra, Coleman v. United States, supra, in its decision involving the counterclaim, and Converse v. Udall, supra, are not contrary to this holding, since those cases involved mandatory type statutes
 
 
 [6]
 We do not decide whether appellants have a claim against the Army for compensation under 43 U.S.C. 315q. That section apparently commits the matter of compensation to agency discretion