Earl M. LUTZENHISER and Leo J. Kottas, Appellants,

v.

The Honorable Stewart H. UDALL, Secretary of the Department of the Interior of the United States of America, et al., Appellees.

No. 23441.

United States Court of Appeals, Ninth Circuit.

Oct. 5, 1970.

Rehearing Denied Nov. 5, 1970.

Leo J. Kottas (argued), Sidney O. Smith, Helena, Mont., for appellants.

Robert S. Lynch (argued), S. Billingsley Hill, Attys., U. S. Dept. of Justice, Shiro Kashiwa, Asst. Atty. Gen., Land & Natural Resources Div., Washington, D. C., Otis Packwood, U. S. Atty., Robt. T. O'Leary, Asst. U. S. Atty. Butte, Mont., for appellees.

Before KOELSCH, ELY and KIL-KENNY, Circuit Judges.

PER CURIAM:

 Except as noted, the District Court's unreported opinion, set out at length, is adopted as the opinion of this court and its judgment is affirmed.[A]

---

A. The District Court lacked jurisdiction under the provisions of the Administrative Procedure Act (5 U.S.C. §§ 701–706) to review the classification order of the Secretary of the Interior with respect to the land covered by the Gold Seal No. 1 claim. Under the Small Tract Act (43 U.S.C. § 682a) the classification of public lands is a matter committed to the discretion of the Secretary. See Mollohan v. Gray, 413 F. 2d 349 (9th Cir. 1969). The validity of his classification was thus not reviewable, since the order did not deprive appellants of a vested property right arising under

"In this action plaintiffs seek to review the decision of the Montana Land Office [1] declaring those portions of the Gold Seal and Gold Seal No. 1 Placer Claims lying within the Southeast Quarter of the Southeast Quarter of Section 14, Township 9 North, Range 3 West, M.P.M., Jefferson County, Montana, void.[2]

The only question in this case is whether an order of the Division of Lands and Mineral Management purporting to classify the lands as suitable for transfer under the Small Tract Act [3] is valid. The lands are in an area which has been the subject of a substantial amount of placer mining activity. The particular land has been frequently located for gold mining purposes and had been classified by the agents of the Bureau of Land Management as mineral land. In 1961 one Wildish filed an application for a patent for three mining claims which together embraced all of the land in the Southeast Quarter of the Southeast Quarter. Agents of the Bureau of Land Management made a field inspection and sampled the claims. The mineral report classified the lands as non-mineral. The patent application was accordingly denied and the mining claims were declared to be null and void on September 12, 1961. On September 26, 1961 Charles E. Mark located a Gold Bond mining claim on a portion of the Southeast Quarter of the Southeast Quarter of said Section 14. On September 29, 1961 the Bureau of Land Management classified the Southeast Quarter of the Southeast Quarter as suitable for transfer under the Small Tract Act and segregated the lands from location under the mining laws. In July of 1963 plaintiffs secured from Charles E. Mark and his wife, Molly, a quit claim deed to the Gold Bond claim. For the purposes of this opinion the court assumes that plaintiffs located the Gold Seal [4] and Gold Seal No. 1 claims on July 21, 1965 and September 21, 1963, respectively, in conformity with the laws of Montana.

The classification order of September 29, 1961 read in part as follows:

' * * * I hereby classify the following described public lands, totaling 40 acres in *Lewis and Clark* County, Montana, as suitable for transfer under the Small Tract Act of June 1, 1938 (52 Stat. 609, 43 U.S.C. 682a) as amended:

### PRINCIPAL MERIDIAN
### MONTANA

T.9 N., R. 3 W., Sec. 14, SE ¼ SE ¼. Containing 40 acres, of which 10 acres are now included in small tract leases M-031202 and M-031401.

2. Classification of the above-described lands by this order segregates them from all appropriations, including locations under the mining laws, except as to applications under the mineral leasing laws. * * * ' (Emphasis added)

The order is in error in that the land actually lies in Jefferson County, and not Lewis and Clark County. The order, with the error uncorrected, was published in the Federal Register October 5, 1961.[5]

Plaintiffs claim that this order was invalid in that it does not show that the Bureau weighed the value of the land for small tract development against its value for mining purposes. Assuming,

---

that claim but instead prevented them from making any valid location on the subject land. Compare Coleman v. United States, 363 F.2d 190 (9th Cir. 1966), reversed on other grounds, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968), with Shaw v. Udall, 264 F.Supp. 390 (D. Or.1967) and United States v. Walker, 409 F.2d 477 (9th Cir. 1969).

The date of relocation of the Gold Seal claim, stated in the opinion to be July 21, 1965, is corrected to read July 21, 1963.

1. The court has jurisdiction under 5 U.S.C. §§ 701–706. See Henault Mining Company v. Tysk, 271 F.Supp. 474 (D.Mont. 1967).

2. The parties agree that all of the plaintiffs' administrative rights have been exhausted.

3. 43 U.S.C. § 682a

4. The Gold Seal claim was a relocation of the Gold Bond claim.

5. 26 Fed.Reg. 9387 (1961).

*arguendo*, that a determination that land is 'suitable for transfer under the Small Tract Act' is not a determination that it is chiefly valuable for small tract purposes, which is what the act requires,[6] still the record here fairly shows that there was a balancing of values and that the Bureau did in fact determine that the land was chiefly valuable for small tract development. No statutes or regulations require that the classification order itself follow any particular form, and if it can be fairly said that the classification order is in effect the ultimate approval of the agency action revealing a consideration of the factors which the law requires to be considered, then the order should be sufficient.

▪ Insofar as the order itself is concerned, the error in description did not invalidate it. There is but one Section 14, Township 9 North, Range 3 West, M.P.M. The erroneous designation of the county would not render a deed void[7] and likewise should not render a withdrawal order void. Those persons dealing with the particular tract would have no trouble identifying it.

Insofar as notice is concerned, a different problem is posed. When notice is required and when a publication is relied upon to give such notice, a misstatement of the county in which the land is located might very well be fatal to the notice. A person scanning a legal publication to determine whether it included any land in which he was interested could very easily be misled by a misnomer of the county. The ordinary person interested in a parcel of land might very well forego any consideration of a notice relating to it on the basis of an incorrect county designation rather than pursue it on the basis of a correct section, township and range description. It is not necessary to reach that problem because there is no requirement that notice of withdrawal be given.

▪ The United States owned the lands and could constitutionally manage them in any way that it saw fit.[8] As a part of that freedom to manage, Congress could grant and withdraw rights to locate mining claims upon the public lands.[9] The withdrawal could be accomplished in any way that Congress saw fit, with or without notice, at least prior to the time that private rights had vested.[10] In those cases where the congressional power to withdraw lands from mineral entry is delegated to the executive branch. Congress could prescribe the method by which the delegated authority should be exercised, and if Congress, either directly or through an executive agency exercising delegated power, should require notice, then the lack of notice would be fatal to a withdrawal order. I am unable to find any requirement that notice be given of withdrawal under Section 682a of Title 43 U.S.C. The section itself is silent.

Section 305 of Title 44 U.S.C.[11] specifying the documents required to be filed

---

6. Apparently the order here was in the form of that approved in Dredge Corporation v. Penny, 362 F.2d 889 (9 Cir. 1966).

7. See, 26 C.J.S. Deeds § 30h (1956).

8. 'For it must be borne in mind that Congress not only has a legislative power over the public domain, but it also exercises the powers of the proprietor therein, Congress "may deal with such lands precisely as a private individual may deal with his farming property. It may sell or withhold them from sale." Camfield v. United States, 167 U.S. 518, 524, 17 S.Ct. 864, 42 L.Ed. 260; Light v. United States, 220 U.S. 523, 536, 31 S.Ct. 485, 55 L.Ed. 570. Like any other owner it may provide when, how and to whom its land can be sold. It can permit it to be withdrawn from sale.' United States v. Midwest Oil Co., 236 U.S. 459 at 474, 35 S.Ct. 309, 59 L.Ed. 673 (1915).

9. 30 U.S.C. § 21.

10. This is the effect of Dredge Corporation v. Penny, supra, note 6.

11. '(a) There shall be published in the Federal Register (1) all Presidential proclamations and Executive orders, except such as have no general applicability and legal effect or are effective only against Federal agencies or persons in their capacity as officers, agents or employees thereof; (2) such documents or classes of documents as the President shall determine from time to time have general ap-

in the Federal Register does not describe withdrawal orders under the Small Tract Act. These orders are not orders of general applicability and legal effect. They do not apply to public lands generally but to specific tracts of land.

█ Executive Order No. 10355, 17 Fed.Reg. 4831 (1952) relied upon by the plaintiffs does require publication of withdrawal orders. The withdrawal orders referred to in Executive Order No. 10355, however, are withdrawal orders made under an authority delegated initially to the President and by him delegated to the Secretary of the Interior. The order does not refer to withdrawals under authority delegated by Congress directly to the Secretary of the Interior as is the case with 43 U.S.C. 682a. For these reasons Executive Order 10355 is not applicable.

█ Assuming that the provisions of 43 U.S.C. §§ 1411 to 1418, have application to the Small Tract Act, still there are no notice requirements. § 1412 of the Act and the regulations following it [12] apply to withdrawals of more than 2560 acres. No law or regulation makes notice a condition to a withdrawal order involving the quantity of land here withdrawn. The error in the published description did not invalidate the withdrawal order.

As to the Gold Seal claim (the relocated Gold Bond) which plaintiffs obtained from Mark and his wife, it is sufficient to note that whatever rights Mark had were relinquished to the United States; that by virtue of the recording of the deed plaintiffs had at least constructive notice thereof,[13] and that Molly Mark, the wife, who is not shown to have any independent title, did not gain one by virtue of her marriage to Mark.[14]

Plaintiffs advance another argument based on Mark's location. Plaintiffs contend that since Mark had a possessory right based upon his mining location, the land was not vacant at the time the withdrawal order was entered and hence could not be withdrawn under 43 U.S.C. § 682a. The pertinent language of that section is:

'The Secretary of the Interior, * * is authorized to sell or lease * * * a tract of not exceeding five acres of any vacant * * * public lands withdrawn or reserved by the Secretary of the Interior for any purpose, which the Secretary may classify as chiefly valuable for residence, recreation, business, or community site purposes, * * *'

█ It was the congressional intention in limiting the Secretary's power under Section 682a to vacant (assuming that the word 'vacant' means something other than free of improvements) land to protect the interests of persons who had obtained valid right in the public land. The assertion of a claim should not prevent the Secretary from making the classification order. Such an order might be conditional because the one asserting the claim would be entitled to be heard and, if after a hearing it was determined that the asserted claim was good, the classification order would fall. If, however, the asserted claim fell, the mere fact that it had been asserted should not cause the classification order to fall. When in this case Mark relinquished his asserted mining rights, such relinquishment was equivalent, at least as between the United States and Mark, to a finding that his claims were not in fact valid. Once Mark was eliminated, no one had any standing to object to the classification order. It would serve no

plicability and legal effect; and (3) such documents or classes of documents as may be required so to be published by Act of the Congress: *Provided*, that for the purposes of this chapter every document or order which shall prescribe a penalty shall be deemed to have general applicability and legal effect.'

12. 43 C.F.R. 2410.0–2 to 2411.2.

13. R.C.M.1947, § 73–201 (Supp.1967).

14. Black v. Elkhorn Mining Company, 163 U.S. 445, 16 S.Ct. 1101, 41 L.Ed. 221 (1896); Clark v. Clark, 126 Mont. 9, 242 P.2d 992 (1952).

purpose to require the Bureau of Land Management to reissue the order. It is sufficient that the United States, through its agents, had asserted its intention to withdraw the land from entry and that the land was in fact vacant long before any rights which the plaintiffs now claim were initiated.

Plaintiffs make some claims based upon an estoppel. Even if the United States were subject to an estoppel, there was no holding out by the United States in this case upon which the plaintiffs relied. They do not claim to have seen the erroneous publication in the Federal Register; they do not claim to have seen the order in the office of the Bureau of Land Management. No serious effort was made to determine whether the land was open for mineral location. Plaintiffs took a chance and if their time and energy spent in locating the claim were wasted, it was not the fault of the Government. This opinion, together with the agreed Facts, constitutes the findings of fact and conclusions of law of the court.

IT IS ORDERED that the plaintiffs be denied all relief.

Dated this 6th day of June, 1968.

ELY, Circuit Judge (concurring):

I concur in the result reached by my Brothers, and I too, am favorably impressed by District Judge Smith's discussion of the problems and the care with which he resolved them. As to the Mark location, however, I entertain some doubt about the significance attached to Mark's so-called relinquishment of his claim. The appellants urged that Mark executed the relinquishing document because of fraudulent misrepresentations made to him by a representative of the Secretary, and the Secretary's final decision recognizes, "It is true that a relinquishment must be voluntary and intentionally executed, and that a relinquishment that is secured through misrepresentation, fraud or deceit is void." Insofar as I can ascertain, there is nothing in the record which adequately rebuts the declaration of Mark himself that "I would not have signed the relinquishment paper to the claim if I had known the truth and if I was not under the duress and threat I was violating the law."

I therefore do not place such great reliance, as my Brothers and the District Court have done, upon the so-called relinquishment. Mark filed his certificate of location on September 26, 1961, and it should, I think, be reemphasized that his wife was not a co-locator. The land was withdrawn, by the Secretary's Classification Order No. 503, on September 29, 1961. The record as a whole makes it quite clear that Mark had discovered no valuable mineral deposits on his claim before the issuance of the Classification Order and that he had made no recognizable investment toward that purpose. This being true, he could have acquired no such vested rights as might have been impermissibly infringed by the order which issued three days after his claim was located. See Cameron v. United States, 252 U.S. 450, 456, 40 S.Ct. 410, 64 L.Ed. 659 (1920). It is this simpler approach which is more appealing to me.