Ray STRICKLAND and Sam Lorimer, Appellants,

v.

Hon. Rogers C. B. MORTON et al., Appellees.

No. 74–1618.

United States Court of Appeals, Ninth Circuit.

June 18, 1975.

Ray Strickland, Sam Lorimer, pro se.

William C. Smitherman, U. S. Atty., Phoenix, Ariz., Wallace H. Johnson, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Richard S. Alleman, Asst. U. S. Atty., Phoenix, Ariz., George R. Hyde, Eva Datz, Dept. of Justice, Washington, D. C., for appellees.

## OPINION

Before BARNES, CHOY and GOODWIN, Circuit Judges.

BARNES, Senior Circuit Judge:

Appellants seek to reverse a decision of the Secretary of the Interior denying their separate applications for homestead entry. Under procedures specified in the Classification and Multiple Use Act of 1964, 43 U.S.C. §§ 1411–18, Federal public lands are to be classified by the Secretary of the Interior either as being "suitable for disposal," or alternatively, as being of such value "as to make them more suitable for retention in Federal ownership" and managed for public purposes. A classification decision that lands are not suitable for disposal has the effect of segregating from homestead entry the lands so classified. The lands which appellants sought to homestead being classified (prior to appellants' applications) as lands "more suitable for retention," the Secretary denied appellants' applications for homestead entry.

Appellants, invoking the jurisdictional provisions of the Administrative Procedure Act, sought judicial review of the Secretary's denial of their applications in Federal District Court. The district court dismissed appellants' action on the authority of this circuit's decision in *Mollohan v. Gray,* 413 F.2d 349 (9th Cir. 1969), which held that agency actions under the Taylor Grazing Act, 43 U.S.C. § 315 *et seq.,* and under similar "permissive type" statutes, are "agency action[s] . . . committed to agency discretion by law" and, therefore, under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), are not subject to judicial review. (*See Mollohan, supra,* at 352, and 352, n. 5: and *Lutzenhiser v. Udall,* 432 F.2d 328 (9th Cir. 1970).) The Classification and Multiple Use Act of 1964, with which the instant case is involved, supplements the Taylor Grazing Act, and is also such a "permissive type" statute. Thus, the district court, relying on the aforementioned precedents, concluded that it did not have jurisdiction in this case to review the Secretary's classification of the land here in question as land more suitable to be retained in Federal ownership and managed for public purposes.

There is no doubt that the district court correctly applied the legal principles set forth in our decisions in *Mollohan* and *Lutzenhiser;* however, a reinspection of those principles is now in order since both of those decisions were rendered before the United States Supreme Court's decision in *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) which strictly interpreted § 701(a)(2), drastically limiting and confining that section's applicability. Under the *Overton Park* case, § 701(a)(2)'s preclusion of judicial review of "agency action[s] . . . committed to agency discretion by law" has been narrowly interpreted so that it deprives the court of jurisdiction to review agency actions only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply'." (401 U.S. at 410, 91 S.Ct. at 821.)

In light of the test stated in *Overton Park,* the question of whether the district court was deprived of jurisdiction by § 701(a)(2) in this case, depends upon whether the discretionary powers to classify land, committed to the Secretary by the provision of the Classification and Multiple Use Act of 1964, 43 U.S.C. § 1411, are so broad that the court cannot discern from the language of the statute, or from legislative intent, a legal basis upon which to review the Secretary's exercise of his discretion in the instant case.

Section 1411 of the Classification and Multiple Use Act of 1964 provides in pertinent part:

§ 1411. Disposal or retention of lands; classification by Secretary; considerations; designations

Consistent with and supplemental to the Taylor Grazing Act of June 28, 1934 . . .

(a) The Secretary of the Interior shall develop and promulgate regulations containing criteria by which he will determine which of the public lands and other Federal lands . . shall be (a) disposed of because they are (1) required for the orderly growth and development of a community or (2) are chiefly valuable for residential, commercial, agricultural (exclusive of lands chiefly valuable for grazing and raising forage crops), industrial, or public uses or development or (b) retained, at least during this period, in Federal ownership and managed for (1) domestic livestock grazing, (2) fish and wildlife development and utilization, (3) industrial development, (4) mineral production, (5) occupancy, (6) outdoor recreation, (7) timber production, (8) watershed protection, (9) wilderness preservation, or (10) preservation of public values that would be lost if the land passed from Federal ownership. . . .

(b) The Secretary of the Interior shall, as soon as possible, review the public lands as defined herein, in the light of the criteria contained in the regulations issued with this section [1] to determine which lands shall be classified as suitable for disposal and which lands he considers to contain such values as to make them more suitable for retention in Federal ownership for interim management under the principles enunciated in this section. In making his determination the Secretary shall give due consideration to all pertinent factors, including, but not limited to, ecology, priorities of use, and the relative values of the various resources in particular areas. . . .
Pub.L. 88–607, § 1, Sept. 19, 1964, 78 Stat. 986.

■ The provisions of this statute breathe discretion at every pore. Its language indicates, and the statute's legislative history serves to emphasize,[2] that Congress intended this Act to be a general grant of authority to the Secretary to administer the retention and disposal of those public lands under his domain as he felt would best comport with the national interest and the public welfare. The Secretary's exercise of his discretion is subjected by the Statute to a required observance of certain procedural due process restrictions (not here put at issue). However, from a viewpoint of legislative restrictions on the Secretary's exercise of his discretion on the merits of a classification decision, the statute provides but few, and at that, the most generalized of limitations. The twelve "basic reasons" for land retention and disposal set forth in the statute, are, according to the legislative history (see note 2), merely "guides" to aid the Secretary in exercising his discretion. They can hardly be said to be very confining; and the statute's admonition to the Secretary to "give due consideration to all

---

1. Regulations implementing the statute and issued by the Secretary in 1970, are found at 43 C.F.R. §§ 2400 et seq.

2. "This act provides that the Secretary of the Interior shall develop and promulgate regulations to govern the administration of the 467 million acres of public lands administered by the Bureau of Land Management. The act sets forth 10 basic reasons for public land retention or disposal to guide his actions.

"In order to promote wide public understanding and acceptance of the criteria which will govern the Secretary's action, he is required to hold a public hearing on the regulations he will promulgate. Prior to the hearing, notice of the proposed regulation shall be published in the Federal Register and supplied to the Speaker of the House and President of the Senate.

"To further effectuate coordinate management of public lands the Secretary, using the criteria of the above regulations, shall review the public lands and classify them into at least two broad groups: those subject to disposal and those subject to retention."
(2 U.S.Code Cong. and Admin.News, 3756 (1964).)

pertinent factors" in making his classification decision, is platitudinous at best.

■■ Every statute, including of course § 1411, has limits which are capable of being exceeded. Thus, even under statutes granting an official the broadest discretion, there will be some (albeit fewer),[3] cases capable of arising under the statute which will present issues to which the court will, in the terms of the *Overton Park* test, "have law to apply." However, the test in *Overton Park* of when a reviewing court lacks jurisdiction due to the provisions of § 701(a)(2), is not whether a statute viewed in the abstract lacks law to be applied,[4] but rather, whether "*in a given case*" there is no law to be applied. When a court is asked to review agency action in instances where considerable discretion is committed by statute to an official, the court lacks jurisdiction due to the provisions of § 701(a)(2) only when the agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent. Where a statute grants broad discretion to an administrative official, absent some action *clearly* contradictory to a statutory provision or legislative intent (*see, e. g., Citizens to Preserve Overton Park, Inc. v. Volpe, supra; Bronken v. Morton,* 473 F.2d 790 (9th Cir. 1973)) a plaintiff challenging an exercise of that discretion may find it an all but insurmountable task to be able to bring his case within this standard, but unless he does so § 701(a)(2) deprives the courts of jurisdiction to entertain his case.

As it is only in the context of plaintiff's complaint that we can determine if there is law to be applied in the instant case, we now turn to an examination of appellants' pleadings to determine whether the questions which he has put at issue present legally cognizable legal issues, under statutory standards to be found in the Classification and Multiple Use Act of 1964.

Appellants' *pro se* complaint alleges that the Secretary of the Interior abused his discretion in maintaining, in face of their application for homestead entry, his classification of the land here in question as lands not suitable for disposal. Appellants' reasons for believing that the Secretary has abused his discretion are:

"(2) Plaintiffs allege that said lands are adjacent to lands under private ownership which are under cultivation and irrigation.

(3) That said lands are best suited for agricultural purposes and are located within a non-critical water area, upon which plaintiffs have irrigation well drilling permits. . . . " (C.T. 2, lines 13–17).

In seeking to amend their complaint after appellees filed a motion to dismiss for lack of jurisdiction, appellants further allege:

"Thus, more work will be required on plaintiffs' complaint because of the clouding of the issues by the government *which originally involved a sole question of proper classification for specific parcels of land* for homestead purposes, where the record shows that

---

**3.** It should be noted that at least to a certain extent the *Overton Park* test is a flexible standard based on the pragmatic and jurisprudential truism that the broader the language of a statute, the less specific it is, and the more nebulous the Congressional intent, the harder it will be for a court to say that an agency has acted beyond the bounds of the discretion committed to it by law. When the reviewing court in a given case finds itself with no law to apply it has no function, and therefore should lack jurisdiction.

**4.** For a statute, which when viewed in the abstract, has no law to be applied, is a meaningless one, if it can be termed "law" at all.

To interpret the *Overton Park* case as requiring a reviewing court, when faced with a question of whether it is deprived of jurisdiction by 701(a)(2) to view a statute in the abstract, examining it to see if there could in any conceivable instance, or under any conceivable situation, arise a case to which the statute would have law to apply, would either (1) mean Congress intended § 701(a)(2) to be without application or effect, or (2) mean that the Supreme Court in the *Overton Park* case "judicially repealed" that statute. Both of these propositions we find as equally unpalatable as we do unlikely.

said lands are suitable agricultural lands in a non-critical water area, which is susceptible to irrigation from a known source of water supply, and which therefore comes within the Multiple Use laws and amendments to the Taylor Grazing Act, which allow homestead entry upon such lands."

(C.T. 40 lines 23–32, emphasis added.)

Even in the considerable spirit of generosity with which this court views *pro se* complaints, we cannot say that appellants have here alleged anything more than their belief that the Secretary had made an error in judgment—a wrong decision.[5]

In the case of *Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d 706 (9th Cir. 1975), this circuit recently reviewed in light of § 701(a)(2) and the *Overton Park* standard, the question of when a court has jurisdiction to review discretionary agency action for abuse of discretion, the court, after reviewing the precedent in this circuit harmonized the cases, observing:

"In considering the 'committed to agency discretion' exception to review, this circuit has been, upon a proper showing, inclined to find jurisdiction to review allegations that an agency has abused its discretion by exceeding its legal authority or by failing to comply with its own regulations; but this circuit has not been quick to approve review of allegations that an agency abused its discretion merely by deciding an issue, involving agency expertise, adversely to a complaining party. This approach accords with the suggestion of the Supreme Court in *Overton Park* that review is required where there is law to apply. And it finds support in the decisions in *United States v. George S. Bush and Co.,* 310 U.S. 371 [60 S.Ct. 944, 84 L.Ed. 1259] (1940) and *Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309 [78 S.Ct. 752, 2 L.Ed.2d 788] (1958). (512 F.2d at 714.)

The *Ness* court went on to hold:

"Where consideration of the language, purpose and history of a statute indicate that action taken thereunder has been committed to agency discretion: (1) a federal court has jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions; (2) but a federal court does not have jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion consists only of the making of an informed judgment by the agency." (512 F.2d at 715.)

Applying these principles to the instant case, we find appellants' complaint fits squarely into the second category defined by the *Ness* court.[6] It may

---

5. While reference is made in appellants' complaint to a claim of right to relief under 43 U.S.C. §§ 1411–18, no facts are pleaded to raise issues under those sections, or under their exemptions (§ 1414), or their termination (§ 1418).

6. We think it not insignificant to note that the *Ness* court mentions discretionary land classification decisions such as those involved in the *Mollohan* case as typical of the type of cases raising issues falling within the non-reviewable category. The *Ness* court observed:

"Other cases which have treated a similar problem arising under the Taylor Grazing Act include Mollohan v. Gray, 413 F.2d 349 (9th Cir. 1969); Sellas v. Kirk, 200 F.2d 217 (9th Cir. 1952).

"In these cases broad discretion was found to exist in areas similar to that with which we are here concerned. In considering the context and purpose of the statute, we find that we must disagree with counsel and that we share the view of the panels which decided *Mollohan* and *Sellas.* Agency expertise and knowledge are deeply involved in the decision to award a special use permit. What is needed, and where, are questions best answered by the forest service, which is involved on a daily basis with the management and use of the national forests. The federal courts have no such expertise, nor, in this case, do the courts have any standards by which acceptance or rejection of a particular applicant could be tested. These factors imply that the decision to award a

be debatable whether the lands here in question are better suited for agricultural purposes or for some public purposes such as wildlife preservation, wilderness preservation, or outdoor recreation, but appellants having raised no issue and having made no showing, that the Secretary in making his classification decision acted contrary to law, or beyond the limits Congress has put on his discretion, the district court, under the provision of 5 U.S.C. § 701(a)(2), lacked jurisdiction to hear their case.

We find this holding, and the principles expressed in this opinion, fully consistent with our decision in *Bronken v. Morton,* 473 F.2d 790 (9th Cir. 1973). The *Bronken* case also deals with the land classification authority of the Secretary of the Interior; however, unlike in the instant case, the *Bronken* case posed a clear instance of the Secretary acting without authority and directly contrary to legislative intent (*Id.* at 795). In *Bronken* the Secretary had attempted to apply retroactively certain statutory provisions which Congress very clearly intended to have only prospective applications.[7] Thus, *Bronken* is a case falling within the first of the denominated categories identified by the court in *Ness,* and the *Bronken* court properly assumed jurisdiction over that case.

The district court in the instant case did not err in finding pursuant to 5 U.S.C. § 701(a)(2) that it was without jurisdiction to review the Secretary's classification of the land here in question.

Nor, of course, can appellants claim jurisdiction under 28 U.S.C. § 1361, or any right to mandamus relief, since mandamus will only lie to command an official to perform a mandatory (*i. e.* nondiscretionary) act. (*See Work v. United States,* 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925).

In summary then, the classification of lands by the Secretary as lands more suitable for retention than disposal has the effect of withdrawing those lands from homestead entry. Until a classification effectively withdrawing lands from entry is revoked, an application for entry may be disallowed. (43 C.F.R. § 2450.6.) Since the denial of appellants' application for entry on lands withdrawn from entry presents no factual issue, and this court, for the reasons herein mentioned, lacks jurisdiction to review the correctness of the Secretary's classification decision, it was appropriate for the district court to grant summary judgment in favor of the defendant under Rule 56(c), Federal Rules of Civil Procedure.

Affirmed.

---

special use permit for construction and operation of a recreational facility was left with the issuing authority and that Congress did not intend for the federal courts to redetermine the question who was qualified to receive a permit. *Hi-Ridge Lumber Co. v. United States,* 443 F.2d 452 (9th Cir. 1971). We hold that the decision here involved was committed to agency discretion by law and that federal courts have no jurisdiction to review such a decision."
(512 F.2d at 716.)

**7.** Thus it is in this context that the following remarks of the court in *Bronken* are to be read:

"While it is true, as the District Court observed, that the Secretary's discretion in classifying public lands is quite broad, it is equally true that this discretion is not absolute. His decisions are beyond judicial scrutiny only when he possesses discretion, and he acts within the limits Congress has placed on this discretion." (*Bronken v. Morton,* 473 F.2d at 794.)