T. Stanley NELSON, Idaho Wildlife Federation, Golden Eagle Audubon Chapter, B. Robert Butler, Marid P. Delisio, Ruthann Knudsen, Max G. Pavesic, David Rice, and Roderick Sprague, Plaintiffs,

v.

Thomas S. KLEPPE, in his official capacity of Secretary of the Interior of the United States, Curtis J. Berklund, in his official capacity as Director of the Bureau of Land Management of the Department of the Interior, William L. Matthews, State Director (Idaho) of the Bureau of Land Management, Defendants,

Robert M. Henggeler,
Intervenor-Defendant.

Civ. No. 1-74-209.

United States District Court,
D. Idaho.

Aug. 20, 1976.

Herbert W. Rettig, Dunlap, Rettig & Rosenberry, Caldwell, Idaho, W. F. Schroeder, Schroeder, Denning & Hutchens, Vale, Or., for plaintiffs.

Wilbur T. Nelson, U. S. Atty., Paul L. Westberg, Asst. U. S. Atty., Boise, Idaho, for defendants.

William F. Ringert, Anderson, Kaufman, Anderson & Ringert, Boise, Idaho, for intervenor-defendant.

## MEMORANDUM DECISION AND ORDER

J. BLAINE ANDERSON, Circuit Judge, sitting by designation.

The plaintiffs have brought this action seeking judicial review, pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701–706, of a November 8, 1974 decision which classified certain real property as suitable for entry under the Desert Land Act, as amended, 43 U.S.C. § 321, et seq. The decision by its terms is the final action of the Secretary of the Interior. The defendants have filed a summary judgment motion which is presently before the court. The matter has been fully briefed, oral arguments have been heard and the court, being fully advised in the premises, undertakes the following:

## FACTS

On December 2, 1966, the intervenor-defendant, Robert M. Henggeler, filed an application under the Desert Land Act to enter 320 acres of land. This application was amended on December 9, 1966, for an entry of 306.15 acres of land. This application was approved on December 11, 1970, by the Idaho Office of the Bureau of Land Management (hereinafter BLM) on issuance of its proposed decision classifying the lands as suitable for orchard development.

On January 7, 1971, plaintiff Nelson filed his initial protest against the proposed classification. On April 13, 1971, Al Steninger, a consultant in range management, submitted an "Amplification of Protest" on behalf of plaintiff Nelson. The grounds for said protest were as follows: The lands have important wildlife values; the lands provide critical open space and recreational values; the underground water supply and watershed would be adversely affected; the lands are not suitable for an orchard; the proposed classification will lead to inequities; the decision was the result of political pressure and the decision should be delayed pending the result of a comprehensive land use program conducted by the BLM.

On July 15, 1971, the Boise manager of the BLM advised Mr. Henggeler and fourteen other desert land applicants that their applications would be held in abeyance pending completion of a comprehensive land use plan for the entire Black Canyon Planning Unit of 55,000 acres.

On July 30, 1973, the Associate Director of the Washington BLM office advised the Idaho Director to complete the review of plaintiff Nelson's protest without awaiting completion of the comprehensive land use plan.

On March 7, 1974, the Idaho Director issued his initial classification decision approving the application for classification of land as suitable for orchard development. Interested parties were then allowed 30 days in which to protest said decision, during which time numerous letters were received, both pro and con.

On August 16, 1974, the matter was submitted to the Secretary of the Interior for the exercise of his supervisory authority. On November 6, 1974, Deputy Assistant Secretary Roland G. Robison affirmed the initial classification decision, such action constituting final agency action. Plaintiff filed his present complaint in this court on December 4, 1974.

The record also reflects that at various stages of the decisional process inquiry was made by Senator Church and Congressmen McClure and Symms regarding the status of Mr. Henggeler's application.

## JURISDICTION

Plaintiff has alleged three statutory provisions to invoke this court's jurisdiction. They are 5 U.S.C. §§ 701–706 (Administrative Procedure Act), 28 U.S.C. § 1361 (Mandamus), and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act). For the reasons hereinafter stated, this court finds that it is without jurisdiction to review the Secretary's classification of the land here in question.

**8**

■ The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, itself is not a jurisdictional statute. The Act merely establishes a new remedy available in cases in which jurisdiction otherwise exists. *Workman v. Mitchell*, 502 F.2d 1201 (9th Cir. 1974); *Ybarra v. City of Town of Los Altos Hills*, 503 F.2d 250 (9th Cir. 1974); *Sellers v. Regents of University of Cal.*, 432 F.2d 493 (9th Cir. 1970), *cert. den.*, 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333; *Work v. United States*, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925).

28 U.S.C. § 1361 states:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

■ The purpose of this section is to allow federal courts jurisdiction to issue writs when it appears that the claim made is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt. *Prairie Band of Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir. 1966); *Jarrett v. Resor*, 426 F.2d 213 (9th Cir. 1970); *United States v. Walker*, 409 F.2d 477 (9th Cir. 1969). Mandamus does not lie to review the discretionary acts of officials. *Armstrong v. United States*, 233 F.Supp. 188 (D.C.Cal.1964), *aff'd*, 354 F.2d 648, *cert. den.*, 384 U.S. 946, 86 S.Ct. 1472, 16 L.Ed.2d 543; *Southport Land & Commercial Co. v. Udall*, 244 F.Supp. 172 (D.C.Cal.1964). However, some circuits have allowed mandamus to lie where an abuse of discretion is involved. *Chaudoin v. Atkinson*, 494 F.2d 1323 (3rd Cir. 1974); *Miller v. Ackerman*, 488 F.2d 920 (8th Cir. 1973).

■ The complained of action in this case is neither clear and certain nor so plainly prescribed as to be free from doubt. The pertinent statute, 43 U.S.C. § 315f provides in pertinent part:

"The Secretary of the Interior is hereby authorized, *in his discretion*, to examine and classify any lands . . . PROVIDED, That upon the application of any applicant qualified to make entry, selection, or location, under the public-land laws, filed in the land office of the proper district, the Secretary of the Interior *shall* cause any tract to be classified, . . ." (emphasis added)

Once a qualified application is made, the Secretary must classify, the duty is clear and certain; however, the particular classification category to be given to the lands still is within the Secretary's discretion, subject to the general regulations in 43 C.F.R. § 2410.1. It is the classification category given to the lands in question that is the heart of plaintiffs' complaint. The Secretary has performed his clear and certain ministerial duty of classifying and mandamus will not lie to direct the Secretary to make a particular classification.

This brings us to the jurisdictional allegations under the Administrative Procedures Act, 5 U.S.C. §§ 701–706. There are two relevant sections of that Act which provide, in pertinent part:

"§ 701. Application; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—. . .

(2) Agency action is committed to agency discretion by law."

"§ 706. Scope of review

To the extent necessary to decision . . . The reviewing court shall—. . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . ."

The conflict in the statutes is obvious; a court may not review action committed to agency discretion, but the court may review action that abuses that discretion. Where to draw the line has caused considerable debate among the commentators, as well as a split in the courts.[1]

1. See Note 11, pg. 713, *Ness Inv. Corp. v. United States Dept. of Agr., Forests*, 512 F.2d 706 (9th Cir. 1975) for a listing of the conflicting treatises and cases.

This case is controlled by two recent Ninth Circuit cases which have noted the conflict and formulated guidelines for its resolution. The first case, *Ness Inv. Corp. v. United States*, 512 F.2d 706 (9th Cir. 1975), involved the question of whether a federal court may review a decision of the Forest Service denying an application for a special use permit for forest land for resort purposes. The court, after reviewing the various positions taken in recent cases, observed:

> "These lines of cases may be rationalized by focusing on the type of question for which review was sought, rather than by focusing on ritualized allegations of arbitrary and capricious agency action. In considering the 'committed to agency discretion' exception to review, this circuit has been, upon a proper showing, inclined to find jurisdiction to review allegations that an agency has abused its discretion by exceeding its legal authority or by failing to comply with its own regulations; but this circuit has not been quick to approve review of allegations that an agency abused its discretion merely by deciding an issue, involving agency expertise, adversely to a complaining party." 512 F.2d at 714.

The court then went on to set the standard by which such agency action is reviewable, in stating:

> "Thus we face the following alternative propositions: Where consideration of the language, purpose and history of a statute indicate that action taken thereunder has been committed to agency discretion: (1) a federal court has jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions; (2) but a federal court does not have jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion consists only of making an informed judgment by the agency." 512 F.2d at 715.

The second case, *Strickland v. Morton*, 519 F.2d 467 (9th Cir. 1975), is more directly in point with the present case. In *Strickland* the district court granted defendant's summary judgment motion, concluding that it did not have jurisdiction to review the Secretary of the Interior's classification of the land in question as land more suitable to be retained in Federal ownership and managed for public purposes. The district court based its decision on the authority of *Mollohan v. Gray*, 413 F.2d 349 (9th Cir. 1969) and *Lutzenhiser v. Udall*, 432 F.2d 328 (9th Cir. 1970).

The Court of Appeals first noted that the district court correctly applied the principles of *Mollohan* and *Lutzenhiser, supra*, but was compelled to review those principles in light of *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) which was rendered after the decisions in *Mollohan* and *Lutzenhiser*. After such review the court held that the Secretary's action in classifying lands as suitable for retention in Federal ownership was precluded from review by the Administrative Procedure Act.

The decision in *Overton Park, supra*, gave a strict interpretation to 5 U.S.C. § 701(a)(2), thereby limiting its application. The court stated:

> ". . . [T]he Secretary's decision here does not fall within the exception for action 'committed to agency discretion.' This is a very narrow exception . . . The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' . . ." 401 U.S. at 410, 91 S.Ct. at 820.

Notwithstanding this narrow exception, the Court of Appeals in *Strickland, supra*, felt that classification decisions by the Secretary are just such exceptions.

The *Strickland* court reviewed the regulations and guidelines set out by Congress as restrictions on the Secretary's discretion. The court quoted extensively from

Section 1411 of the Classification and Multiple Use Act of 1964, a portion of which is pertinent here:

"In making his determinations the Secretary shall give due consideration to all pertinent factors, including, but not limited to, ecology, priorities of use, and the relative values of the various resources in [the] particular areas . . ." Pub.L. 88–607, § 1, Sept. 19, 1964, 78 Stat. 986.

It is important to note that the same language appears in the regulations the Secretary must follow in this case. See 43 C.F.R. § 2410.1.[2]

The *Strickland* court went on to observe: "Where a statute grants broad discretion to an administrative official, absent some

action *clearly* contradictory to a statutory provision or legislative intent [citations omitted] a plaintiff challenging an exercise of that discretion may find it an all but insurmountable task to be able to bring his case within this standard, but unless he does so § 701(a)(2) deprives the courts of jurisdiction to entertain his case." 519 F.2d at 470.

In evaluating whether plaintiff has met this standard, reference must be made, as in *Strickland*, to plaintiffs' pleadings to determine whether the questions put at issue present legally cognizable legal issues.

Plaintiff, in his amended complaint, set out in the margin,[3] has presented numerous

2. § 2410.1 All Classifications.

All classifications under the regulations of this part will give due consideration to ecology, priorities of use, and the relative values of the various resources in particular areas. They must be consistent with all the following criteria:

(a) The lands must be physically suitable or adaptable to the uses or purposes for which they are classified. In addition, they must have such physical and other characteristics as the law may require them to have to qualify for a particular classification.

(b) All present and potential uses and users of the lands will be taken into consideration. All other things being equal, land classifications will attempt to achieve maximum future uses and minimum disturbance to or dislocation of existing users.

(c) All land classifications must be consistent with State and local government programs, plans, zoning, and regulations applicable to the area in which the lands to be classified are located, to the extent such State and local programs, plans, zoning, and regulations are not inconsistent with Federal programs, policies, and uses, and will not lead to inequities among private individuals.

(d) All land classifications must be consistent with Federal programs and policies, to the extent that those programs and policies affect the use or disposal of the public lands.

3. In making his classification and opening for entry the land hereinabove described as permitted by Section 7 of the Taylor Grazing Act (48 Stat. 1272; 43 U.S.C. § 315f) so as to subject the same to entry under the Desert Land Act, defendants:

1. Erroneously concluded that an environmental impact statement required by the National Environmental Policy Act of 1969 (83 Stat. 852, 42 U.S.C. §§ 4321, 4331–4335, 4341–4347) and Executive Order of March 5, 1970,

# 11514 (35 Fed.Reg. 4247) and the regulations promulgated thereunder, was unnecessary, and did not write and circulate such a statement.

2. Failed to determine as required by the Migratory Bird Treaty Act (40 Stat. 755; 16 U.S.C. § 703 et seq.) when, to what extent, if at all, and by what means, it is compatible with the terms of the convention between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 (39 Stat. 1702) to allow the killing of the Long-billed Curlew (*Numenius americanus*) and the nests and eggs thereof, which will occur by said classification and entry; said specie having been declared by the United States to be within the protected classification (Wildlife Leaflet 486: May, 1969, "Birds Protected by Federal Law": United States Department of the Interior; Article I, 1(d) Proclamation of December 8, 1916 (39 Stat. 1702), 50 C.F.C. § 10.12–13.)

3. Failed to comply with measures directed by Executive Order 11593 (36 Fed.Reg. 8921 et seq.) made pursuant to the Antiquities Act of 1906 (34 Stat. 225, 16 U.S.C. § 431 et seq.) for the identification and preservation of sites of historical or archaeological significance within and upon the land opened for said entry and which will be destroyed as a result of said classification and entry.

4. Erroneously regarded this entry as an isolated federal action and failed to decide that no such entry may be made within the State of Idaho unless and until the conversion of national resource land within Idaho to private land be considered as a whole in such classification and that an environmental impact statement be written and circulated in the process of making such classification as required by said National Environmental Policy Act of 1969.

5. Erroneously classified and permitted entry to said land for the only purpose of orchard-

challenges to the Secretary's decision. These allegations can be classified into several categories. First, the allegations that the Secretary "erroneously concluded," "erroneously regarded," and "did not give due consideration," these allegations answer themselves insofar as this court's ability to review the Secretary's decision. Implicit in the wording of the allegations is the fact that the Secretary considered the various factors and came up with a judgment call unfavorable to plaintiffs. There are no allegations that the matters considered were beyond the Secretary's jurisdiction or beyond his statutory powers. It is apparent from these allegations that the plaintiffs are dissatisfied because in their opinion the Secretary made the wrong decision, a decision clearly within his discretion and jurisdiction, and hence not reviewable by this court under the authorities espoused above.

The next category—the allegations that the Secretary "failed to minimize disturbance or dislocation to existing users" and "produced an inequity . . . in derogation of 43 C.F.R. § 2410.1(c)." Apparently it is plaintiff's position that any change or disturbance to existing users is not allowed. Carrying this argument to its logical end would indicate that once a grazing permit is allowed, which does not create any title or interest in the land, but is merely a privilege, *Action v. United States*, 401 F.2d 896 (9th Cir. 1968), then any reduction in that privilege would constitute an inequity. This holding would give a permanent effect to the grazing privilege which is not the law, *Action, supra*. Additionally, this is the type of decision which is clearly in the Secretary's discretion and subject to the expertise of that office. Again, this court

ing, finding that said land is unsuitable for the production of agricultural crops generally, whereas no such classification is authorized.

6. Produced an inequity between plaintiff Nelson and the entryman in derogation of 43 C.F.R. § 2410.1(c).

7. Did not give due consideration to ecological considerations in derogation of 43 C.F.R. § 2410.1, specifically in that they did not:
   a. Recognize that in March, 1973, within the Resource Publication 114 there was listed upon page 204 thereof, that the Long-billed Curlew is a specie possibly threatened with extinction and called for further information which, if confirmed, would entitle said specie to the protection of the Endangered Specie Act of 1973 (87 Stat. 884) and without such further information they by the Final Action exposed such specie to destruction;
   b. Recognize that said land and adjacent land provide an important feeding and nesting ground for raptorial birds protected by the Snake River Birds of Prey Natural Area;
   c. Recognize that said land has landscape characteristics which provide opportunity for subdivision development to the end that the surrounding public land will be no longer susceptible to Multiple Use Management;
   d. Recognize that many soils found upon said land are such as to stimulate accelerated wind erosion when exposed and accelerated water erosion when irrigated.

8. Erroneously concluded that said land is suitable or adaptable to agricultural use in derogation of 43 C.F.R. § 2410.1(a);

9. Failed to minimize disturbance to or dislocation of existing users, including plaintiff Nelson, as required by 43 C.F.R. § 2410.1(b);

10. Are inconsistent with Federal programs and policies affecting the use or disposal of the public lands, specifically summarized within Instruction Memo No. ISO 74–255, dated Nov. 13, 1974, from Idaho State Director, Bureau of Land Management (6230) (930), in derogation of 43 C.F.R. § 2410.1(d).

11. Are inconsistent with Federal programs and policies within Idaho pursuant to which (within a five mile radius of the public lands which are the subject of this action) 21 applications for Desert Land Entries have been rejected and 14 applications for Desert Land Entries have been suspended, and except for one other, the entry alleged in Paragraph VII is the only one approved and was approved notwithstanding the adverse recommendation of defendant Mathews and the manager of Idaho Grazing District # 1 of defendant Mathews and the Chief of the Division of Wildlife of the United States Department of the Interior, Bureau of Land Management.

In approving the application for entry under the Desert Land Act, defendants:

12. Erroneously concluded that said land was desert land within the meaning of Section 2 of said Act in that:
   a. Said land is suitable or adaptable to producing an "agricultural crop," when in fact it is not;
   b. Said land is an economically feasible operating unit for the production of a reasonably remunerative "agricultural crop," when in fact it is not.

has no jurisdiction to review such decisions. *Strickland, supra.*

The next category—the allegations that said decision is inconsistent with State and Federal policies. Plaintiffs contend that the Secretary's decision is inconsistent with the formulation of the Management Framework Plan implemented approximately July 15, 1971. The land entries were to be held in abeyance pending completion of this project. It is important to note that of the fourteen pending land entries, only Mr. Henggeler's entry had been approved initially. It was during the interim after approval of Henggeler's entry and before plaintiff Nelson's protest was being analyzed that this plan was implemented. Finally, on July 30, 1973, the Associate Director of the Washington BLM office directed the State Director to complete the review of plaintiff Nelson's protest without awaiting the completion of the Management Framework Plan. The policy formulated is not the same as an administrative regulation which has the force and effect of law. *Pacific Gas & Electric Co. v. Federal Power Commission*, 164 U.S.App.D.C. 371, 506 F.2d 33 (1974). The Secretary must weigh and analyze the various factors of the particular land entry in relation to the proposed policy. Such policy is not statutorily required and in fact was formulated after initial approval of Mr. Henggeler's entry. The decisions are matters best directed to the Secretary's discretion and expertise and within his jurisdiction to make such a decision.

Plaintiff makes the allegation that the Secretary erroneously classified the land as suitable for an orchard, whereas, no such classification is recognized. This contention is laid to rest by *Samuel D. Block*, 45 L.D. 481 (1916), wherein the Department of the Interior stated that fruits may be considered as agricultural crops. *See also*: 29 U.S.C. § 203(f); *Walling v. Rocklin*, D.C., 44 F.Supp. 355 (1943).

■ The final category of allegations—those alleging noncompliance with the Migratory Bird Treaty Act, 16 U.S.C. § 703, et seq., and the Antiquities Act of 1906, 16 U.S.C. § 431, et seq. Initially, it must be mentioned that these questions were never raised in the administrative proceedings, but rather were presented for the first time to this court. Ordinarily, this court will not review questions that were not brought before the administrative agency. *National Forest Preservation Group v. Butz*, 485 F.2d 408 (9th Cir. 1973); *U. S. v. Consolidated Mines & Smelting Co.*, 455 F.2d 432 (9th Cir. 1971).

Out of an abundance of caution this court has reviewed the record in this regard. The State Director, in his initial classification and in the Environmental Analysis Record prepared in response to plaintiff Nelson's protest, specifically considered these matters.

■ In regard to the Antiquities Act, the district office found "There are no known educational, scientific, cultural or historic values on the subject lands . . . Also, any surface sites would have probably been mechanically disturbed during the range reseeding project in 1953." (See TAB 26 of the Administrative Record). Also, even at this late date, the plaintiffs have not pointed out any specific historical site, but contend that such may be present. The decision of the district office cannot be overturned in regard to mere possibilities, especially in light of a finding specifically to the contrary.

■ As to the Migratory Bird Treaty Act, the district office, in its initial classification report, found that "Wildlife habitat will not be significantly reduced by the loss of these lands." (See TAB 10 of the Administrative Record). Again, in its analysis of protest the district office found that "It has been determined by Bureau and State Biologists that the land is not a curlew nesting area, . . ." These findings are supported by substantial evidence and this court cannot substitute its own judgment for that of the agency.

### CONCLUSION

On the basis of *Strickland, supra*, this court is of the opinion that it is without

jurisdiction to review the various challenges made to the classification decision of the Secretary. This court has, however, out of an abundance of caution and concern for plaintiffs' rights, reviewed the record in limited circumstances and has determined that the decisions made are supported by substantial evidence. This concern and caution was undertaken mainly due to the conflicting and uncertain state of the law in regard to judicial review limitations under the Administrative Procedure Act.

Accordingly,

IT IS HEREBY ORDERED, DECREED and ADJUDGED that the defendants' summary judgment motion be, and is hereby, GRANTED and plaintiffs' action is DISMISSED.