954 F.2d 534
 60 USLW 2461, 36 Soc.Sec.Rep.Ser. 203,
Unempl.Ins.Rep. (CCH) P 16450A
 Charles BRIGGS, Frank Rouse, Robert Pierce, Elizabeth
Freeland, James Pugh, Plaintiffs-Appellants,
v.
Louis W. SULLIVAN, Secretary of the United States Department
of Health and Human Services, Dorcas R. Hardy,
Commissioner of the Social Security
Administration, Defendants-Appellees.
 No. 90-15747.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 10, 1990.
Decided Jan. 9, 1992.
 
 Curtis L. Child, Legal Services of Northern Cal., Sacramento, California, for plaintiffs-appellants.
 Edmund F. Brennan, Asst. U.S. Atty., Sacramento, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before TANG, REINHARDT and WIGGINS, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 This class action law suit alleges that the practices of the Secretary of the United States Department of Health and Human Services ("Secretary") denied plaintiffs benefits to which they were entitled.[1] This appeal presents three issues: (1) whether the Secretary fails to investigate representative payee applicants as required by 42 U.S.C. § 405(j)(2) and 42 U.S.C. § 1383(a)(2)(B); (2) whether the plaintiffs (hereafter "Briggs") are entitled to a declaratory judgment for duplicate payments when representative payees whom the Secretary did not investigate, steal or misuse benefits; and (3) whether the Secretary has a duty to find suitable representative payees for those plaintiffs (hereafter "Pierce") whose disability is drug addiction or alcohol abuse. The District court granted the Secretary's motion for summary judgment on each of these claims. Briggs and Pierce appeal. We affirm.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Charles Briggs suffers a disabling mental impairment, a condition which renders him eligible to receive disability payments from the federal government. Because of the nature of Briggs' impairment, the Secretary has decided that Briggs' federal benefit payments should be paid to a representative payee to act essentially as a trustee for Briggs, paying his basic expenses and giving him money as necessary and prudent.
 
 
 3
 Robert Pierce, another appellant in this case, is also disabled. Because his benefits constitute "Supplemental Security Income Payments" and because his disability stems in part from alcohol or drug addiction, the Secretary is required by statute to make the payments to which Pierce is entitled to a representative payee rather than directly to Pierce.
 
 
 4
 Briggs, and others similarly situated, sued to compel the Secretary to pay their benefits directly to them while they sought a representative payee or a replacement for a representative payee. Robert Pierce, and others similarly situated, sought the same type of order and also to compel the Secretary to designate suitable "representative payees" for them.
 
 
 5
 This case was previously before us on an appeal from the denial of a preliminary injunction. Briggs I, 886 F.2d at 1134. At that time, we held that several subgroups of the plaintiff class of Social Security ("Title II") and Supplemental Security Income ("Title XVI") recipients were entitled to a preliminary injunction on their claim that the Secretary was unlawfully withholding payments to plaintiffs who, for various reasons, did not have a responsible representative payee. Id. at 1148.
 
 
 6
 On remand, the district court entered a permanent injunction enjoining the Secretary from refusing to pay directly Title II or Title XVI benefits to eligible California recipients who have been determined to need but do not have representative payees. This ruling has not been appealed.
 
 
 7
 The Secretary's current practice in appointing payees has several components. First, the Secretary requires the payee to fill out an application. Second, the Secretary conducts an interview with the prospective payee. The Secretary often also conducts an interview with the beneficiary. The payee is required to sign the application under a heading which states:
 
 
 8
 I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under Federal law by fine, imprisonment or both. I affirm that all information I have given in this document is true.
 
 
 9
 The Secretary verifies the payee's Social Security number through its computer system. The Secretary will frequently make outside contacts to determine if the payee is suitable.
 
 
 10
 The injunction did not cover Title XVI recipients eligible for benefits because of drug abuse or alcoholism. As to the process for the appointment of representative payees for these Title XVI recipients, the district court granted partial summary judgment to the Secretary and held that: (1) the Secretary's screening program fulfills his statutory duty to investigate representative payees; (2) the plaintiffs are not entitled to duplicate payments for benefits misused by representative payees; (3) the Secretary breached no obligation to locate suitable representatives for drug or alcohol dependent recipients; and (4) those beneficiaries who are legally incompetent but without representative payees are not entitled to direct payments.
 
 
 11
 The plaintiffs appeal all but the fourth ruling. The Secretary asserts that this court lacks jurisdiction to review the adequacy of the investigation conducted by the Department of Health and Human Services. We reject this jurisdictional contention and we affirm the district court's judgment.II. STANDARD OF REVIEW
 
 
 12
 We review a grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 III. DISCUSSION
 
 13
 1. The Duty of the Secretary to Investigate Representative Payees.
 
 
 14
 Briggs argues that the Secretary routinely does nothing that could be construed as an investigation. The Secretary asserts, on the other hand, that both we and the district court lack jurisdiction to examine this claim. Despite the Secretary's continuing objection to our jurisdiction, we reaffirm our holding in Briggs I that we have jurisdiction in this case. 886 F.2d at 1137-42.
 
 A. The Secretary's Duty to Investigate
 
 15
 The district court held that the Secretary has a duty to investigate representative payees. The district court did not err in this conclusion. This holding was premised on the language of 42 U.S.C. § 405(j)(2) and 42 U.S.C. § 1383(a)(2)(B). Section 405(j)(2) states:
 
 
 16
 Any certification made ... for payment to a person other than the individual entitled to such payment must be made on the basis of an investigation carried out either prior to such certification or within forty-five days after such certification, and on the basis of adequate evidence that such certification is in the interest of the individual entitled to such payment (as determined by the Secretary in regulations). The Secretary shall ensure that such certifications are adequately reviewed.
 
 
 17
 The legislative history of this section reveals that investigation of the suitability of representative payees was a significant congressional concern. H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 43, reprinted in 1984 U.S.Code Cong. & Admin.News 3080, 3101. The House Report on section 405(j) stated that the Secretary might be required to appoint representative payees prior to the completion of an investigation, but "the Secretary should do so cautiously." Id. Congress dictated that large lump sum retroactive payments should "not ordinarily be paid to new representative payees until the investigation of their suitability has been successfully completed." Id.
 
 
 18
 The Senate Report reflects this same concern:
 
 
 19
 When the Social Security Administration finds that such individuals cannot manage their own funds, it has a serious obligation to exercise caution i[n] selecting an alternate payee and to undertake reasonable efforts to assure proper use of and accountability for the benefits disbursed to that payee. The Committee amendment would establish a statutory base for that obligation of the agency.
 
 
 20
 S.Rep. No. 466, 98th Cong., 2d Sess. 29 (1984). The statutory language and the legislative history thus set forth the Secretary's duty to investigate representative payees. The next question is whether the Secretary fulfills that obligation.
 
 B. The Extent of the Investigation
 
 21
 Briggs asserts that the legislative history of 42 U.S.C. §§ 405(j)(2) and 1383(a)(2)(B) indicates that Congress intended a duty to conduct an investigation of greater proportions than that which the Secretary presently performs. Specifically, Briggs argues that the statutory term "investigation" requires something more than the mere taking of an application.
 
 
 22
 i. The Administrative Procedures Act
 
 
 23
 The district court held that the scope of the Secretary's investigation was beyond review because the Administrative Procedure Act ("APA") prevents judicial review of decisions which are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The APA precludes review when " 'in a given case' there is no law to be applied." Strickland v. Morton, 519 F.2d 467, 470 (9th Cir.1975) (emphasis omitted) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971)).
 
 
 24
 When a court is asked to review agency action in instances where considerable discretion is committed by statute to an official, the court lacks jurisdiction due to the provisions of § 701(a)(2) only when the agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent.
 
 
 25
 Strickland, 519 F.2d at 470.
 
 
 26
 Here, the Secretary has no discretion whether to conduct an investigation. The legislative history clarifies congressional intent with regard to the investigation requirement. Additionally, the Supreme Court has, in other contexts, explained what constitutes an adequate investigation. See Brotherhood of Ry. & Steamship Clerks v. Association for the Benefit of Non-Contract Employees, 380 U.S. 650, 662, 85 S.Ct. 1192, 1198, 14 L.Ed.2d 133 (1965) (duty to investigate is a duty to make such investigation as the nature of the case requires; an investigation is essentially informal, not adversarial; it is not required to take any particular form); Inland Empire Dist. Council v. Millis, 325 U.S. 697, 706, 65 S.Ct. 1316, 1321, 89 L.Ed. 1877 (1945) (same). Because we have statutory standards, case law, and legislative intent indicating Congress's desires, we conclude that the APA does not prohibit our review of the Secretary's investigation of representative payees.
 
 
 27
 ii. The Agency's Construction of Statutes
 
 
 28
 When construing statutes, we show " 'great deference to the interpretation given the statute by the officers or agency charged with its administration.' " E.P.A. v. National Crushed Stone Ass'n, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980) (quoting Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). Here, we review the agency's construction of 42 U.S.C. §§ 405(j)(2) and 1383(a)(2)(B).
 
 
 29
 Our first inquiry is whether Congress has directly spoken to the precise question at issue. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). While the House and Senate reports shed some light on requirements for an investigation, they do not speak to the precise question of the nature and extent of the Secretary's duty to investigate. We therefore conclude that Congress has not specifically addressed the issue of how extensive an investigation is required of the Secretary.
 
 
 30
 When confronted with congressional silence, we examine "whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782. The agency's interpretation of the statute is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S.Ct. at 2782 (footnote omitted).
 
 
 31
 In determining whether the agency's construction meets this standard, the relevant inquiry is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Volpe, 401 U.S. at 416, 91 S.Ct. at 824. We are "not empowered to substitute [our] judgment for that of the agency." Id.
 
 
 32
 iii. Analysis of Investigation Conducted By Secretary
 
 
 33
 Railway Clerks and Inland Empire provide useful parallels for this case. Both dealt with a requirement that the National Labor Relations Board investigate controversies concerning the representation of employees in union disputes. In both cases, the court held that an "investigation" is "essentially informal, not adversar[ial]. The investigation is not required to take any particular form...." Inland Empire, 325 U.S. at 706, 65 S.Ct. at 1321; Railway Clerks, 380 U.S. at 662, 85 S.Ct. at 1198. "These principles [that an investigation is informal] are particularly apt here where Congress has simply told the Board to investigate and has left to it the task of selecting the methods and procedures which it should employ in each case." Railway Clerks, 380 U.S. at 662, 85 S.Ct. at 1199.
 
 
 34
 In this case, the Secretary (1) takes evidence from the prospective representative payee on an application form; (2) conducts an interview with the payee and often times the beneficiary; (3) requires the payee to sign the application under knowledge of the penalty for perjury; (4) verifies the payee's social security number; and (5) makes outside contacts. These procedures, the Secretary concludes, amount to an adequate investigation. The Secretary's conclusion is not a clear error of judgment. It is neither arbitrary nor capricious. It takes into account the relevant factors of the purpose of the investigation and the allocation of the Secretary's resources. We therefore hold that the Secretary adequately investigates representative payees.[2]
 
 C. Due Process
 
 35
 Briggs argues that due process demands that the Secretary conduct a more thorough investigation. Briggs asserts that the interest of an individual in continued receipt of benefits is a statutorily created property interest. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Briggs further asserts that the failure of the government adequately to investigate representative payees results in the deprivation of these benefits. Citing Mathews, Briggs argues that the district court should have balanced the plaintiffs' interest in the benefits and the value of the extra investigative procedure against the government's interest in not conducting a more thorough investigation. We disagree.
 
 
 36
 Briggs is correct that the continued receipt of benefits is a statutorily created property interest. Briggs is also correct that we must then ask whether the governmental procedures for distributing these benefits affords the recipients due process of law. We must ask whether the recipients' interest in enhanced procedures outweighs the government's interest in administrative convenience. See Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 984-85, 108 L.Ed.2d 100 (1990) (discussing Mathews ). Because we find the governmental interest weightier, we reject Briggs' contention.
 
 
 37
 The recipients' interest in enhanced procedures is somewhat limited. Although receipt of the benefits is very important, the recipients are already accorded substantial procedural protection. The recipient is given notice and an opportunity to be heard. The prospective payee is also interviewed and is required to give information under penalty of perjury. In some cases, additional investigation is undertaken, the threat of which helps to maintain the integrity of the process.
 
 
 38
 The recipients' interest in enhanced procedures is also limited by the fact that the loss results in part from the wilfulness of private actors. Although imposing additional investigatory duties on the Secretary might decrease the likelihood of loss, the decrease would be limited by the government's inability to control the ultimate actions of the payees.
 
 
 39
 On the other hand, the governmental interest in administrative convenience cannot be overlooked. The fiscal and administrative burdens of requiring the government to provide representative payees would be substantial. In the alternative, subjecting every prospective payee to rigorous investigation would be costly and time-consuming, and anything less would be unlikely to result in substantial improvement in the rate of loss.
 
 
 40
 In sum, the Mathews balance in this case falls solidly in favor of the existing procedures. Although those losses that do occur are highly regrettable, the Constitution only requires the government to take reasonable measures, not perfect ones. Requiring the Secretary to succeed in all of his efforts would be to require the impossible. Though the procedures now in place are not perfect, they are reasonable. Accordingly, Briggs' due process claim must fail.
 
 D. Promulgation of New Regulations
 
 41
 Briggs asserts that the Secretary is required to promulgate new regulations because the statutory provision mandating the investigation states that the certification must be made "as determined by the Secretary in regulations." 42 U.S.C. § 405(j)(2), § 1383(a)(2)(B). Briggs cites Pulido v. Heckler, 758 F.2d 503, 507 (10th Cir.1985) as support for this proposition.
 
 
 42
 Pulido is inapposite. In that case the Secretary had authored no regulations. Id. at 506. In Briggs' case, however, there are regulations codified at 20 C.F.R. §§ 404.2001 through 404.2055 and §§ 416.601 through 416.635. Therefore Pulido is not dispositive or persuasive authority.
 
 
 43
 Additionally, we note that the Secretary advised Congress that the agency would not enact new regulations because the agency felt that its policies already fulfilled the requirements of the 1984 legislation. Report to the Congress by the Secretary of Health and Human Services, Implementation of Section 16 of Public Law 98-460, Social Security Disability Benefits Reform Act of 1984 at 3. Since this report, Congress has not ordered the promulgation of new regulations. In light of Congress's apparent acquiescence, we conclude that the district court did not err in refusing to hold that new regulations are required.
 
 
 44
 2. Declaratory Judgment.
 
 
 45
 Briggs and Pierce argue that the district court erred in failing to grant them a declaratory judgment that the Secretary must pay benefits not received by the beneficiaries due to the failure of the Secretary to conduct an adequate investigation. Because we have concluded that the Secretary investigates representative payees in accordance with its statutory mandate, the district court did not err in refusing to grant the requested relief.[3]
 
 
 46
 3. Duty to Find Representative Payees for Title XVI Beneficiaries.
 
 
 47
 Pierce argues that the Social Security Act and the Secretary's regulations impose a duty to find payees for recipients whose disability is based on drug or alcohol abuse. The district court held that, even if this duty exists and is enforceable, the Secretary already does all that he can to find a suitable and willing payee.
 
 
 48
 Pierce relies on language in 42 U.S.C. § 1383(a)(2)(A) which states "the Secretary shall provide for making payments of the benefit to any" representative payee. We find no enforceable duty to seek out representative payees contained in this language.
 
 
 49
 Pierce also relies on 20 C.F.R. § 416.650 which states: "When we learn that the interests of the beneficiary are not served by continuing payment to the present payee or that the present payee is no longer able to carry out the payee responsibilities, we try to find a new payee." We find no enforceable duty to find representative payees in the language of this regulation either. We conclude the Secretary has no statutory duty to find representative payees for recipients of Title XVI benefits whose disability is related to drug or alcohol abuse.
 
 IV. CONCLUSION
 
 50
 We hold that the Secretary investigates payees as required by 42 U.S.C. § 402(j)(2) and § 1383(a)(2)(B). Accordingly, Briggs and Pierce are not entitled to a declaratory judgment that they should be repaid benefits misused by payees. Finally, the Secretary has no enforceable duty to find representative payees for those beneficiaries whose disability is based on drug abuse or alcoholism. The judgment of the district court is therefore
 
 
 51
 AFFIRMED.
 
 
 52
 REINHARDT, Circuit Judge, dissenting.
 
 
 53
 I agree with the majority that we have the authority to review the Secretary's decisions in the present cases. I also agree that the Secretary has no obligation to find representative payees for Title XVI beneficiaries who are entitled to disability payments based on drug or alcohol abuse. However, my agreement ends there. I strongly disagree with the majority's principal holding--that the Secretary's present practices fulfill his statutory obligation to investigate prospective payees for Title II and Title XVI recipients. There is no material dispute as to what procedures the Secretary follows. However, those procedures are wholly inadequate and fail to comply with the plain meaning of the statute and the expressed legislative intent. Accordingly, I would reverse the district court's order granting summary judgment to the defendants and instruct the court to grant that relief to the plaintiffs instead. I would then hold that the plaintiffs are entitled to retroactive duplicate payments for misappropriated funds. Finally, I would remand for trial on the question whether the Secretary fulfills his obligation to attempt to find representative payees for persons entitled to benefits because of drug or alcohol abuse. See 20 C.F.R. § 416.650.
 
 
 54
 * I must, at the outset, disagree with the majority's assertion "that Congress has not specifically addressed the issue of how extensive an investigation is required of the Secretary." Ante at 538. The very statutory provisions that require the Secretary to conduct an investigation of each prospective payee also require "adequate evidence" that certifying the particular payee will be in the interest of the recipient. 42 U.S.C. § 405(j)(2); 42 U.S.C. § 1383(a)(2)(B). Therefore, a statutorily sufficient investigation is one which is calculated to produce "adequate evidence" of the representative payee's fitness.
 
 
 55
 A proper analysis of the adequacy of the Secretary's procedures would proceed in two steps. First, we should ask what kind of information about each prospective payee the Secretary must obtain in order to fulfill his "serious obligation to exercise caution i[n] selecting an alternate payee and to undertake reasonable efforts to assure proper use of and accountability for the benefits disbursed to that payee." S.Rep. No. 466, 98th Cong., 2d Sess. 29 (1984) (quoted ante at 537). Second, we should decide whether the Secretary's procedures are designed to provide that kind of information. At least in the present circumstances--where the procedures have been in use for a considerable period of time, as part of the second step we should look at whether the Secretary's procedures in fact produce the necessary information. The majority undertakes neither of the necessary steps.
 
 
 56
 The law is well established that we must evaluate the Secretary's procedures in light of the kind of investigation required by the nature of the case. See Brotherhood of Ry. & Steamship Clerks v. Association for the Benefit of Non-Contract Employees, 380 U.S. 650, 662, 85 S.Ct. 1192, 1198, 14 L.Ed.2d 133 (1965). The majority reasons, however, that because Congress did not specify the particular kind of investigation required, we must accept the Secretary's procedures so long as they could be described as an "investigation" in the abstract. In doing so, the majority misconstrues the Supreme Court's statement that use of the term "investigation" does not require a fixed set of formal procedures. See Railway Clerks, 380 U.S. at 662, 85 S.Ct. at 1198; Inland Empire Dist. Council v. Millis, 325 U.S. 697, 706, 65 S.Ct. 1316, 1321, 89 L.Ed. 1877 (1945). The majority also unjustifiedly expands the principle of deference to administrative agencies.
 
 
 57
 Under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), we are required to defer to an agency's "permissible construction of a statute" that it is charged with executing, even if we believe that there may be a better construction. Here, Congress left the Secretary some latitude to select a particular kind of investigation--so long as he chose a method that was designed to provide adequate evidence. Thus, had the Secretary chosen one set of procedures designed to produce adequate evidence, we would not be entitled to overrule his choice merely because we might prefer a different set of procedures. In other words, once we have made the threshold determination that the Secretary's procedures are adequate we may not ask whether they are the best possible procedures. We must, however, make the threshold determination. Under Chevron, the Secretary has discretion to choose procedures, but his discretion is limited by the fact that the procedures must be designed to provide adequate evidence. The majority ignores this limitation.
 
 
 58
 Furthermore, the majority misapplies Chevron in an additional way. Under Chevron we are required to defer to those administrative policies that are promulgated as regulations. However, the procedures which the Secretary follows in deciding whether to approve a prospective payee are not set forth in any regulation. Rather, they are contained in the Social Security Administration's "Program Operations Manual System" ["POMS"]. See Briggs v. Sullivan, 886 F.2d 1132, 1134 (9th Cir.1989) ("Briggs I"). Because these procedures have not been promulgated by regulation in the Federal Register they are not entitled to deference under Chevron. See Racine v. United States, 858 F.2d 506, 508 (9th Cir.1988). In any event, even if the procedures followed by the Secretary had been promulgated as regulations, I would hold them inconsistent with the statutory requirement of an investigation designed to provide adequate evidence.
 
 
 59
 When one undertakes the proper analysis, it becomes manifestly clear that the Secretary does not perform an adequate investigation. As I have noted, the first step is to identify the kind of information that the Secretary must obtain in order to perform an adequate investigation. Here, we need not speculate, because the Secretary himself has identified the information necessary to determining whether an applicant will be a suitable payee. As he states in his brief in our court, the information includes: (1) the prospective payee's social security number; (2) whether the prospective payee is related to the beneficiary; (3) if the beneficiary lives with the prospective payee, the circumstances surrounding the arrangement; (4) whether the prospective payee is employed, and if not, what his source of income is; (5) whether the prospective payee is a creditor of the beneficiary; (6) whether the prospective payee has been convicted of a felony; and (7) whether the prospective payee is or has served as a payee for other individuals.
 
 
 60
 The crucial question is whether the procedures followed by the Secretary are designed to provide "adequate evidence" with respect to the necessary information about each prospective payee. The majority sets forth five elements of the "investigation" conducted by the Secretary: (1) the Secretary requires each prospective payee to fill out an application that asks questions about the subjects described above; (2) a Social Security representative interviews each prospective payee; (3) the Secretary requires each prospective payee to sign the application under penalty of perjury; (4) the Secretary verifies that an applicant's social security number matches the name he or she has given; and (5) in some cases, a Social Security representative makes outside contacts for the purpose of verifying the information supplied by the prospective payee. See ante at 538-39.
 
 
 61
 The majority neglects to discuss all of the steps that the Secretary fails to take. The record contains substantial evidence that in numerous cases the Secretary makes no efforts whatsoever to verify any of the information provided by the prospective payee. Indeed, the standard procedure is for the Social Security representative not to make any outside contacts unless the representative believes that some piece of information provided by the prospective payee himself justifies such contacts. Thus, for example, if a prospective payee states that he has no criminal record, the Secretary makes no attempt to verify this information. Similarly, as a rule, the Secretary makes no effort to verify payees' income. Furthermore, prospective payees are not even required to show identification,[1] and payees are routinely approved on the very same day they apply, based entirely on the information they themselves provide. In short, in numerous cases, the Secretary's "investigation" consists solely of recording information provided entirely by the prospective payees themselves.
 
 
 62
 In essence, the Secretary's investigation consists almost exclusively of asking the prospective payee to answer a series of questions. That process could be described as an adequate investigation only if one were willing to assume that the typical individual applying to be a payee is forthright and honest in completely disclosing information that would lead to the Secretary rejecting his application. As a matter of simple common sense, this assumption is incorrect. As we noted when last this case was before us, beneficiaries who are required by the Secretary to receive payments through representative payees often have no choice but to rely on less than trustworthy individuals. "Faced with a pressing need to find new representatives, many [beneficiaries] turn to potentially unreliable characters--the fellow residents of homeless shelters, the most casual acquaintances, or the bartenders who provide alcohol abusers with their daily rations--to serve as their 'trustees.' " Briggs I, 886 F.2d at 1136. It is precisely because the typical beneficiary is vulnerable to being preyed upon by his or her payee that Congress required the Secretary to "exercise caution," H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 43, reprinted in 1984 U.S.Code Cong. & Admin.News 3080, 3101, in approving payees. Whatever else Congress may have meant by ensuring that the certification of payees be based on "adequate evidence," 42 U.S.C. § 405(j)(2); 42 U.S.C. § 1383(a)(2)(B), it can hardly be supposed that Congress intended for the Secretary to accept a prospective payee without taking any steps at all to verify that the information provided by that individual is truthful.
 
 
 63
 Moreover, even if the Secretary's procedures were not facially inadequate, in the present case the plaintiffs have submitted numerous affidavits documenting the inadequacy of those procedures in practice. The Secretary has approved payees who had previously been convicted of Social Security fraud as well as other felonies; he has approved payees who were serving as payees for other beneficiaries and charging those beneficiaries "fees" or extorting sexual favors from them in exchange for access to their money; and he has approved unemployed, homeless payees with no source of income.
 
 
 64
 The consequences of the Secretary's policy are as tragic as they are predictable. Individuals who depend for their very survival on their meager benefits are lucky if they receive even a small fraction of the funds paid to their representatives. Lump sum payments earmarked for vital medical treatment, food, and shelter frequently disappear with the representative payee. In some cases, beneficiaries have had four or more successive representative payees abscond with their funds. In short, as a result of the Secretary's policy, the neediest of citizens have been denied the means to their survival--means to which they are by law entitled.
 
 
 65
 The Secretary does not suggest that the evidence presented by the plaintiffs is in any way unreliable. Rather, he acknowledges that his policy has had the horrific effects to which the plaintiffs point, but contends that his "investigations" are adequate despite their effects. I strongly disagree with the majority's implicit acceptance of the Secretary's argument that we may judge the adequacy of the "investigations" without looking to their practical effects. Furthermore, even if I were to look only to the policy, I would disagree with the majority's conclusion that the questioning of self-interested payees performed by the Secretary constitutes an adequate investigation. I would hold, as a matter of law, that the Secretary does not comply with his statutory duty to investigate prospective payees simply by having them fill out a form and asking a few questions, the answers to which he fails to verify.
 
 II
 
 66
 Because I would hold that the Secretary's procedures do not satisfy his statutory duty, I find it unnecessary to reach the constitutional question whether those procedures also deny the plaintiffs' their right to due process. However, since the majority does pass on the question, it is worth pointing out a few matters.
 
 
 67
 The plaintiffs' due process argument consists of the following steps: (1) they have a property interest in the benefits to which they are by statute entitled; (2) the government may not deprive them of their property without adequate procedures; (3) turning over their benefits to payees whose fitness the Secretary has not adequately attempted to verify constitutes a deprivation of the benefits. The plaintiffs advance a classic "procedural due process" claim.
 
 
 68
 The first part of the plaintiffs' argument is beyond dispute. Statutory entitlements of the sort at issue in the present case have long been recognized as "property" within the meaning of the fifth and fourteenth amendments. See Goldberg v. Kelly, 397 U.S. 254, 255, 90 S.Ct. 1011, 1014, 25 L.Ed.2d 287 (1970). The second step of the plaintiffs' argument is similarly uncontroversial, as it merely sets forth the basic requirement of due process that attaches to all property interests. See Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 984-85, 108 L.Ed.2d 100 (1990); Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). It is the third step that is the source of the disagreement. The majority rejects the plaintiffs' argument that their need for enhanced procedures outweighs the government's interest in administrative convenience.
 
 
 69
 Were it necessary for me to reach the constitutional question, I might well find that the Secretary's procedures are inconsistent with the requirement of procedural due process. The Secretary's interest in administrative convenience cannot justify a failure to take the minimal steps necessary to ensure that the plaintiffs actually receive their benefits. See Mathews, 424 U.S. at 332, 96 S.Ct. at 901 (setting forth a balancing test for evaluating procedural due process claims). However, even if the Secretary's procedures could be said to meet the constitutional minimum (a doubtful proposition at best), the fact that serious constitutional questions are raised should require that--in the interest of avoiding those questions--we construe the statute as requiring more than the Secretary currently does. See United States v. Watt, 910 F.2d 587, 592 (9th Cir.1990) (applying the "cardinal principle" that statutes are to be construed so as to avoid constitutional questions) (citations omitted).
 
 III
 
 70
 Because I disagree with the majority as to whether the Secretary fulfills his statutory obligation to "investigate" representative payees, I must also reach the plaintiffs' argument that they are entitled to retroactive payments for the money that their payees misappropriated. I would hold that they are so entitled.
 
 
 71
 The Social Security Act provides that a payment to a representative payee "under conditions set forth in subsection (j)" of 42 U.S.C. § 405 "shall be a complete settlement and satisfaction of any claim, right, or interest in and to such payment." 42 U.S.C. § 405(k). The obvious inference from this language is that when payments are not made under the conditions of subsection j--which contains the investigation requirement--those payments do not settle a beneficiary's claim.
 
 
 72
 The regulations also support this reading. 20 C.F.R. §§ 404.2041 and 416.641 provide that the Secretary's "obligation to the beneficiary is completely discharged when [he] make[s] a correct payment to a representative payee on behalf of the beneficiary. The payee personally, and not SSA, may be liable if the payee misuses the beneficiary's benefits." (Emphasis added). As the District of Colorado court concluded, a correct payment is not one made to an uninvestigated payee. Holt v. Bowen, 712 F.Supp. 813, 818 (D.Colo.1989). I agree with the court's analysis in Holt. As I would read the regulation, the second quoted sentence--which refers to the beneficiary's liability in the event that the payee misuses the benefits--only comes into play in cases in which the Secretary has satisfied his obligation to investigate the payee. In short, if the Secretary has made a correct payment, i.e., a payment to a properly investigated payee, then he is not liable for any misuse of funds. In light of Congress' concern that the Secretary investigate payees, this is, in my opinion, the most reasonable interpretation of the statute and the regulation.
 
 
 73
 In fact, Congress has expressly authorized retroactive compensation for underpayments in 42 U.S.C. §§ 404(a)(1) and 1383(b)(1)(A). Both provisions provide for compensation whenever "the correct amount of payment" has not been made. The Secretary claims that the statutory references to "payment" imply that his duty is discharged when a check is sent, regardless of whether it is received by the beneficiary. Under the Secretary's reading of the statutory language, if a check in the correct amount is sent to someone who has no connection at all to the beneficiary, his duty is discharged. This reading is, to put it charitably, strained. As under the regulations, a statutorily "correct" payment is one made in accordance with the statutory command that payees be investigated. Accordingly, I would remand for a determination of the Secretary's liability for retroactive duplicate payments.
 
 IV
 
 74
 While I agree with the majority's conclusion that the Secretary has no legal obligation to locate suitable representative payees for Title XVI beneficiaries who are entitled to benefits because of drug or alcohol abuse, see ante at 541, I do not agree that this conclusion disposes of those beneficiaries' claims. In my view, there is a genuine issue of material fact with respect to the question whether the Secretary satisfies his legal obligation to "try to find a new payee," 20 C.F.R. § 404.2050; 416.650, for those beneficiaries whose previous representative payees have been found to be unsuitable. See National Medical Enterprises v. Bowen, 851 F.2d 291, 293 (9th Cir.1988) (agency regulations have the force and effect of law).
 
 
 75
 The Secretary has introduced evidence that he does in fact try to find new payees for beneficiaries who receive Title XVI payments because of drug and alcohol dependency. He argues, and the majority apparently agrees, that the fact that the efforts do not always succeed does not mean that he has failed to satisfy the regulatory requirement that efforts be made. This proposition is certainly correct. However, the plaintiffs' principal contention is not that the efforts don't succeed, but that in many cases no efforts are made at all.
 
 
 76
 The plaintiffs have introduced extensive evidence that conflicts with the Secretary's evidence that he attempts to locate new payees for Title XVI recipients. For example, the declaration of Jose L. Sanchez, a Social Security Administration claims representative, states that "[i]t is common practice for [beneficiaries] to be told to find anyone they can to act as their payee or otherwise they may not receive benefits." Mr. Sanchez states further that Social Security Administration claims representatives "are unable to make referrals or suggestions where persons can find representative payees." Numerous other claims representatives have signed affidavits to the same effect. This evidence directly contradicts the Secretary's evidence that claims representatives do try to find payees.
 
 
 77
 The result is a genuine issue of material fact as to whether the Secretary makes any effort to locate suitable payees. Hence, I would hold that summary judgment on this issue was improper.
 
 V
 
 78
 The Supreme Court has made clear that in its view, our Constitution places no affirmative obligations on the government to alleviate the suffering of society's most unfortunate members. See DeShaney v. Winnebago, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). See also United States v. Kras, 409 U.S. 434, 457, 93 S.Ct. 631, 644, 34 L.Ed.2d 626 (1973) (Stewart, J., dissenting) ("The Court today holds that Congress may say that some of the poor are too poor even to go bankrupt."). The theory which apparently underlies this view is that the people should decide whether their fellow citizens are entitled to those commodities essential to their very survival, commodities without which all of the freedoms guaranteed by the Constitution are hollow promises. However limited the Supreme Court's construction of the Constitution may be, it is not the cause of today's decision. Today, it is our own misconstruction of a statute that serves to deprive the homeless and the dispossessed of their rights. On this occasion, the people--through their representatives in Congress--have seen fit to alleviate the suffering of the plaintiffs who appear before us. No principle of statutory construction or of deference to agency expertise compels the majority's decision upholding the government's careless squandering of funds that Congress earmarked for the benefit of these individuals. The responsibility for their continued misery must, unfortunately, rest with us. I dissent.
 
 
 
 [1]
 A detailed account of the underpinnings of this case and the statutory framework against which it is set appears in Briggs v. Sullivan, 886 F.2d 1132 (9th Cir.1989) (Briggs I)
 
 
 [2]
 Briggs and Pierce argue that Holt v. Bowen, 712 F.Supp. 813 (D.Colo.1989), stands for the proposition that the Secretary fails to adequately investigate representative payees. In that case, however, the Secretary made no investigation of the plaintiff's payee. That court specifically narrowed its holding by stating: "We do not infringe upon the Secretary's authority to determine the scope of the investigation of proposed representative payees. However, at a minimum, such an investigation should include appropriate background questions along with a face to face interview." Holt, 712 F.Supp. at 818. The Secretary requires both these procedures. Therefore, Briggs's reliance on Holt is misplaced
 
 
 [3]
 Briggs and Pierce cite the recent amendment to 42 U.S.C. §§ 405(j) and 1383(a)(2) which provides that the Secretary must certify for payment to the beneficiary an amount equal to the amount of misused benefits where the negligent failure of the Secretary to investigate or monitor a representative payee results in the misuse of the benefits. Briggs' argument in the district court and before us was confined to a narrow issue of statutory construction: that is, the definition of the Secretary's investigatory duty under 42 U.S.C. §§ 405(j) and 1383(a)(2)(B). Briggs neither argued nor established that the Secretary's actions constituted tortious negligence. Therefore, this amendment is not relevant to our disposition of this case
 
 
 [1]
 This fact substantially undermines the usefulness of the Secretary's "verification" of prospective payees' Social Security numbers. The Secretary only verifies that the number given by the prospective payee matches the name he has given. The Secretary routinely makes no effort to verify that the payee is in fact the person he claims to be