**Lester CHRISTIANSON,**
**Plaintiff–Appellant,**

v.

**Jack HAUPTMAN, Superintendent Fire Island National Seashore, National Park Service, U.S. Dept. of the Interior, Defendant–Appellee.**

**No. 1010, Docket 92–6237.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1993.

Decided April 14, 1993.

---

Burton C. Agata, Hempstead, NY, for plaintiff-appellant.

Stacy Caplow, Sp. Asst. U.S. Atty. (Mary Jo White, U.S. Atty., Robert L. Begleiter, Deborah B. Zwany, Asst. U.S. Attys., E.D. of N.Y., of counsel), for defendant-appellee.

Before OAKES, ALTIMARI, and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Lester Christianson appeals from a judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge*) dismissing his complaint in its entirety following the grant of summary judgment for defendant-appellee Jack Hauptman. Christianson brought suit against Hauptman in Hauptman's official capacity as the Superintendent of the Fire Island National Seashore in order to set aside a regulation that had the effect of prohibiting the operation of seaplanes and amphibious aircraft in Robbins Rest.

Robbins Rest is a small Fire Island community of approximately forty homes, which until the mid–1980s had been exempted from the general prohibition against seaplanes. In 1985, the National Park Service removed Robbins Rest's exemption based on the representations by a Robbins Rest community association that a majority of the homeowners favored the rescission of this exemption.

Christianson, a Robbins Rest resident and seaplane pilot, submitted a petition to the National Park Service requesting a formal reconsideration of the rescission. Hauptman subsequently polled the Robbins Rest property owners directly. The results of this poll were inconclusive, and Hauptman declined to process the regulatory change proposed by Christianson.

Christianson then filed suit against the National Park Service and Hauptman, alleging that the Service had acted arbitrarily and capriciously when it removed Robbins Rest from the exempted list, as well as when it declined to enact a regulatory change to restore Robbins Rest to the list. The district court granted Hauptman's motion for summary judgment, finding as a matter of law that the National Park Ser-

vice did not act in an arbitrary or capricious manner.

For the reasons set forth below, the judgment of the district court is affirmed.

## BACKGROUND

In 1964, Congress enacted the Fire Island National Seashore Act, which, *inter alia,* authorized the Secretary of the Interior to establish an area to be known as "Fire Island National Seashore." 16 U.S.C. §§ 459e, *et seq.* (1988). The National Park Service ("Service") is the administrative agency charged with the responsibility of managing the resources and environment of the National Seashore. There are seventeen privately-owned communities on Fire Island, one of which is Robbins Rest. These communities are within the Community Development District of the National Seashore, 36 C.F.R. § 28.3 (1992), while the dunes, the beach, and the ocean and bayfront waters are in separate districts within the Service's jurisdiction.

In 1966, the Service adopted general rules prohibiting the operation and use of all aircraft on land or water throughout the Fire Island National Seashore except at landing areas designated in special regulations. 36 C.F.R. § 2.17(a). These regulations were not strictly enforced for seaplanes until 1978, when the Service proposed rules to control seaplane operations. 43 Fed.Reg. 35,070 (1978). This proposal was prompted by complaints from homeowners and boaters about aircraft taxiing and unauthorized docking, take-offs, and landings. The National Seashore Superintendent proposed these additional rules "to promote the safety of all users, minimize the conflicts among the various uses and to protect the resources of the Seashore." *Id.* In 1979, the National Park Service, following accepted procedures, adopted a regulation which exempted Robbins Rest, among other communities, from a complete ban on seaplanes in order to facilitate travel to Fire Island. 36 C.F.R. § 7.20(b)(3).

Christianson has been a seaplane owner and pilot since 1952. In 1968, he purchased a house in Robbins Rest that had a ramp and docking facilities for a seaplane.

Christianson used those docking facilities to dock his seaplane from the time he purchased the property. The Service's failure to enforce its regulations from 1968 until 1978 resulted in Christianson being able to land his seaplane at Robbins Rest. Furthermore, after the exemption was adopted in 1979, Christianson was once again free to land his seaplane at Robbins Rest.

The exemptions granted by the National Park Service allowing for seaplane access did not meet with universal approval among the residents of Fire Island. In the two years following the enactment of the regulation, at least five of the twelve exempt communities requested that the exemption be rescinded. Each of the five areas was removed from the list of exempted communities following a formal request from the community, publication in the *Federal Register,* and a thirty-day waiting period for comments.

Most of the communities on Fire Island, including Robbins Rest, are not formally organized under New York State law. These communities have no elected or appointed officials or civil government of any form, but rather maintain property owners associations which represent the interests and views of the residents. Therefore, when the five communities wished to rescind their exemption, they provided the Service with referenda from the communities showing community approval for the rescission.

Beginning in 1981, a movement began in Robbins Rest to remove the community from the exempted list and thus ban seaplane access to the community. The record indicates that at any one time there were several groups claiming to represent community sentiment, and several individuals claiming to be officers in those groups. In 1984, after three years of inaction and only sporadic demonstrations of community interest, the Service accepted a representation that a majority vote at a general membership meeting of the Robbins Rest Ocean View Property Owners Association, Inc. had favored rescission of the exemption. Pursuant to this representation, the Service published a rule in the *Federal Register*

removing Robbins Rest from the exempted list. 49 Fed.Reg. 49,647 (1984). After the thirty-day waiting period, the final rule banning seaplanes from Robbins Rest became effective on June 11, 1985.

Following the enactment of the rule, the Service received another flurry of letters from residents purporting to represent both the community association and the sentiment of the community. These letters suggested that the community now wanted seaplane access. However, the Service also received letters suggesting that the community remained satisfied with the repeal of the exemption. Over the next several years, the Service received sporadic communications from Robbins Rest, creating confusion about what the community actually wanted.

Finally, on September 5, 1990, Christianson submitted a petition to the Service requesting a formal reconsideration of the rescission. In light of the apparent split in public opinion, defendant-appellee Hauptman, the Superintendent of the Fire Island National Seashore, decided to poll Robbins Rest property owners directly. Hauptman asked each of the 40 property owners in the community to vote on the matter by ballot, stating by letter to each that the change would only be made if a majority of property owners voted in favor of the rescission and if safety concerns could be adequately addressed. Only 24 ballots were returned, and only 13 favored returning Robbins Rest to exempted status. Based on this poll, where less than half of the property owners voted to exempt the community, Hauptman declined to process the regulatory change.

Christianson's response was to file a lawsuit against the Service and Hauptman in the United States District Court for the Eastern District of New York (Wexler, *J.*). On August 11, 1992, the district court dismissed Christianson's claim, finding as a matter of law that the Service did not act in an arbitrary or capricious manner when it removed Robbins Rest from the exempted list, or when it declined to enact a regulatory change to restore Robbins Rest to the list.

This appeal followed.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

On appeal, we must first address the National Park Service's contention that this Court lacks subject matter jurisdiction over this dispute. Specifically, the Service argues that the grant of discretion given to the Service is so broad as to preclude judicial review. We disagree, and conclude that although the discretion given is quite broad, it is not so broad that it allows the Service unfettered authority without judicial oversight.

■ Title 5 U.S.C. § 702 (1988) provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ... is entitled to judicial review thereof." However, this grant of jurisdiction is limited by 5 U.S.C. § 701(a)(2), which exempts from judicial review "agency action ... committed to agency discretion by law." The Supreme Court has ruled that this "very narrow exception" to the general grant of jurisdiction is "applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (citation omitted).

The Service maintains that it cannot be subject to judicial review because its grant of authority for the Fire Island National Seashore is so broad that this Court would have no basis for determining the proper scope of discretion. *See Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) ("review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.").

As Christianson points out, however, the statutory provisions governing the management of the Fire Island National Seashore suggest that Congress sought to lim-

it the scope of the Service's authority to the environmental preservation of the area. *See, e.g.,* 16 U.S.C. § 459e(a) (1988) (authorizing creation of the Fire Island National Seashore "[f]or the purpose of conserving and preserving for the use of future generations" the environment on Fire Island); 16 U.S.C. § 459e-6(a) ("The Secretary shall administer and protect the Fire Island National Seashore with the *primary* aim of conserving the natural resources located there.") (emphasis added); 16 U.S.C. § 459e-6(c) (providing further guidance to the Secretary in providing for the "conservation and development of natural resources").

Furthermore, this Court has available to it standards by which it can evaluate the Service's investigation, whose adequacy has been challenged by Christianson. *See, e.g., Briggs v. Sullivan,* 954 F.2d 534, 538 (9th Cir.1992) (holding that 5 U.S.C. § 701(a)(2) did not preclude judicial review over the adequacy of an administrative investigation). There is also "no showing of clear and convincing evidence of a legislative intent to restrict access to judicial review" of the actions taken by the Service. *Volpe,* 401 U.S. at 410, 91 S.Ct. at 820 (citation omitted). Therefore, this Court has jurisdiction to review whether the Service's actions were undertaken without adequate investigation or whether the actions taken were detrimental or completely unrelated to conserving and preserving Fire Island's environment.

By arguing that its decisions are unreviewable, the Service is essentially seeking unfettered authority to manage the area in whatever way it deems appropriate. However, it is conceivable that the Service might strip owners of their rights in an effort to achieve a purpose wholly unrelated or in degradation of the Service's mandate. If this Court were to accept the Service's argument, we would be unable to judicially review such actions. In our society, judicial review provides an important escape route from bureaucracy's iron cage. This is not a case in which this exit should be obstructed.

## II. *Applying the Arbitrarily and Capriciously Standard*

 Having held that this Court has subject matter jurisdiction, we now must review the Service's decision. This Court can only set aside an agency action if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Dopico v. Goldschmidt,* 687 F.2d 644, 654 (2d Cir.1982) (reviewing court should look for a "clear error of judgment"). Christianson argues that the Service acted arbitrarily and capriciously because its actions were not based on concerns about the environment. Specifically, Christianson alleges that instead of basing its action on whether seaplanes are the method of transportation posing the least danger to the seashore's environment, the Service was motivated solely by community sentiment. Furthermore, Christianson argues that the Service failed to investigate adequately the confusing and contradictory nature of the communications coming from the residents of Robbins Rest. However, given the applicable standard, we decline Christianson's invitation to reverse the Service's actions.

Christianson argues that the Service removed Robbins Rest's exemption without a defensible finding of public impact. The Service knew, however, that five other communities had already asked for rescission of the exemption, and was aware of the risks of seaplane activity and the public apprehension of those risks to the environment of Fire Island. Therefore, the complaints emanating from Robbins Rest represented merely the newest voice in a chorus of negative responses to this increasingly controversial activity. Given legitimate public concerns about the noise and the potential danger generated by seaplanes, it was neither arbitrary nor capricious for the Service to grant the rescission and ban them.

Moreover, it is readily apparent that seaplanes do not contribute to the natural resources and recreational environment on Fire Island. Rather, seaplanes are at best a convenience, making travel to Fire Island quicker. Therefore, the decision to prevent

seaplanes from landing and docking at Robbins Rest properly contributed to a reduction in noise and potential danger from the planes, thereby adding to the area's natural ambience.

Finally, the fact that the Service polled the community upon Christianson's petition demonstrated that, at the very least, the mood of the community was not strongly in favor of lifting the ban and reinstating the exemption. While Christianson may not like the results of this poll, it was neither arbitrary nor capricious for the Service to rely on public approval or disapproval in making its decision. *See Briggs,* 954 F.2d at 538–39 (holding that investigation was neither arbitrary nor capricious and noting that investigations are "essentially informal, not adversarial" and are "not required to take any particular form") (citations omitted); *Conservation Law Foundation of New England v. Secretary of the Interior,* 864 F.2d 954, 959 (1st Cir.1989) (holding that Secretary of Interior's consideration of all relevant factors, including results from a survey of visitors, was not arbitrary and capricious).

We therefore find that the Service has carefully examined the relevant facts and evidence at issue here, and that after so doing the Service has articulated a rational basis for its decisions. Accordingly, we will not disturb this agency's determination.

## CONCLUSION

In light of the foregoing, the judgment of the district court is affirmed.