33 F.3d 58
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul CHARLTON, Tom J. Davis; Jack C. Davis; Tom R. Davis;
Leonore Davis; Claudine Davis, dba Tom Davis Farms
Partnership; Terry Ludeman; Courtney Morse; Timmco
Incorporated, a Washington corporation on behalf of
themselves and all others similarly situated, Plaintiffs-Appellants,
v.
Edward MADIGAN, Secretary, U.S. Department of Agriculture;
COMMODITY CREDIT CORPORATION, Defendants-Appellees.
 No. 93-35279.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided Aug. 16, 1994.
 
 Before: GOODWIN, D.W. NELSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants, a class of wheat and barley farmers from Eastern Washington, brought this action challenging the issuance of two "Production Adjustment Disaster Notices" by the Washington State Agricultural Stabilization and Conservation Service ("ASCS") Committee, which operates pursuant to authority delegated to it by the Secretary of Agriculture ("the Secretary"). These two notices, Production Adjustment Disaster Notice 83 and Production Adjustment Disaster Notice 95 ("PAD-83" and "PAD-95"), effectively denied the farmers disaster relief payments under the federal Disaster Assistance Act of 1989. The district court granted the Secretary's motion for summary judgment and the farmers appealed. We have jurisdiction pursuant to 12 U.S.C. Sec. 1291 and we affirm.
 
 I. Judicial Review of PAD-83 and PAD-95
 
 3
 The district court found that it had jurisdiction to review the actions of the state ASCS committee. The Secretary contests this finding, arguing that prevented planting determinations are wholly discretionary with the Secretary under Section 101(a)(1) of the 1989 Act.[1]
 
 
 4
 Under the Administrative Procedure Act ("APA"), judicial review of an agency action is precluded "to the extent that ... agency action is committed to agency discretion by law." 5 U.S.C. Sec. 701(a). This exception is "very narrow," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971), and applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " Id. (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). See also Heckler v. Chaney, 470 U.S. 821, 830 (1985) ("review is not to be had if the statute is drawn so that a court would have no meaningful standard" to apply).
 
 
 5
 The Secretary contends that the statutory language at issue gives the agency extremely broad discretion and the court no objective criteria by which to review the agency's decision. We disagree. First, that the statutory scheme vests the Secretary with broad discretion and that courts should defer to that discretion does not necessarily render the Secretary's administration of the disaster relief program unreviewable. See Briggs v. Sullivan, 954 F.2d 534 (9th Cir.1992) (review proper where statute mandated investigation by government but gave discretion as to extent). The Supreme Court has made clear that a strong presumption exists that Congress intends judicial review of administrative action. Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670-71 (1986); see also Lincoln v. Virgil, 113 S.Ct. 2024, 2030 (1993). Second, while the 1989 Act vests the Secretary with the broad discretion to determine which farmers have been prevented from planting due to damaging weather in 1989, it mandates disaster relief payments to the farmers who meet that determination. We believe that the statute provides enough of a standard for the Court to determine whether the state ASCS committee's actions were "reasonably related to the purposes of the statute" it sought to implement. See Vierra v. Rubin, 915 F.2d 1372, 1376 (9th Cir.1990).
 
 II. The Promulgation of PAD-83 and PAD-95
 
 6
 The district court found that PAD-83 and PAD-95 constituted "plausible" constructions of the 1989 Act. Appellants argue that the district court erred in so finding because the relevant statutory provisions were stated in mandatory, not discretionary terms. Appellants also contend that PAD-83 and PAD-95 conflict with the Secretary's own regulations, and thereby constitute a violation of the appellants' due process rights.
 
 A. The 1989 Act
 
 7
 Section 101(a) of the Disaster Assistance Act of 1989 provides, in pertinent part, as follows:
 
 
 8
 if the Secretary of Agriculture determines that, because of damaging weather or related condition in 1988 or 1989, ... [farmers enrolled in the Department of Agriculture's production adjustment program suffered significant crop loss] ... the Secretary shall make a disaster payment available to such producers
 
 
 9
 (emphasis added). Section 112(1) of the 1989 Act defines "damaging weather" to include "drought." Section 101(a)(4)(A)(i)(II) extends disaster relief under the statute to farmers who "were prevented from planting acreage to such commodity because of damaging weather" and who had designated all or a portion of their property to "conservation or other uses in accordance with" a federal program.
 
 
 10
 The Washington State ASCS Committee's stated purpose in issuing PAD-95 was to provide the county committees with the state committee's policy "that dry weather will not be an approved reason for prevented planting in 1989." The Secretary contends that PAD-95 was a valid exercise of the broad discretion given the agency by Congress to determine whether a farmer was truly prevented from planting by a natural disaster. Appellants argue that, by promulgating PAD-95, the state committee unilaterally and arbitrarily determined that drought was not an approved reason for prevented planting, and thereby violated the mandatory language of the 1989 Act.
 
 
 11
 Appellants' argument that the state committee exceeded its authority by effectively reading drought out of the statute is unpersuasive. The Secretary concedes there was a drought,[2] but argues that the state committee made the valid determination that the appellants were not prevented from planting because of the drought. If Congress had truly wanted to provide relief for all farmers who suffered losses due to damaging weather, then the "prevented from planting" and "as determined by the Secretary" language would be entirely superfluous. Thus, the proper focus of our analysis is on the "prevented from planting" language.
 
 
 12
 Nowhere does the Act or the legislative history further delineate the bounds of the Secretary's discretion to determine whether a farmer was prevented from planting due to damaging weather.[3] Neither does the Act define, nor the legislative history illuminate, what constitutes being "prevented from planting." If, as here, a statute is silent or ambiguous on a particular point, we must defer to the agency's interpretation and our review is limited to whether an agency's conclusion is based on a permissible construction of the statute. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).
 
 
 13
 The Washington State ASCS Committee denied benefits to a specific group of Washington state farmers only after a thorough examination of local farm conditions. At its November 1989 meeting, the committee examined, inter alia, (1) weather reports in the relevant areas for the past year; (2) precipitation records for the past ten years; (3) copies of moisture soil tests of several farms; (4) a random sampling of disaster relief applications; (5) testimony from committee members who had observed that the dry conditions had not prevented many other farmers in the same counties from planting and harvesting their crops; and (6) statements submitted by various interested parties. The committee's conclusion was bolstered by the observations of several committee members that many farmers in the area had successfully planted crops of wheat and barley in 1989.
 
 
 14
 The committee determined that the climate was such that no farmer in Washington who had made a sincere effort to plant during the 1989 growing season could have been prevented from planting. The administrative record shows that the committee's decision was neither arbitrary nor capricious, but was a reasonable response to the confusion on the part of the county committees regarding how to separate the farmers who truly had been prevented from planting from those who were opportunistically switching programs in order to receive a higher level of benefits.
 
 
 15
 There is no language in the 1989 Act mandating a case-by-case determination of prevented planting eligibility, nor does any provision bar a blanket determination. The committee did not arbitrarily read language into the statute. See, e.g., Northwest Forest Workers Ass'n. v. Lyng, 688 F.Supp. 1, 7-9 (D.D.C.1988) (agency arbitrarily incorporated "herbaceous" requirement in defining vegetables). Nor did it make an uninformed decision. Id. at 9-11 (exclusion of sugar cane from definition of "perishable commodities", based solely on personal opinion of agency official, was arbitrary). PAD-95 constitutes a reasonable exercise of the Secretary's discretion granted him by the 1989 Act.
 
 B. Departmental Regulations
 
 16
 Appellants argue that PAD-83 and PAD-95 violate Department of Agriculture regulations and should be declared invalid. We generally defer to an agency's interpretation of its own regulations. Pyramid Lake Paiute Tribe v. Hodel, 882 F.2d 364, 369 (9th Cir.1989) (agency interpretation of own regulations is of controlling weight unless plainly erroneous or inconsistent with the regulations).
 
 
 17
 In support of their argument, the appellants point to 7 C.F.R. Sec. 1477.4(a) (1990), which provides that "[d]isaster payments will be made available to eligible producers ... who suffered losses because of an eligible disaster in 1988 or 1989." Although this provision is phrased as an imperative, another provision, 7 C.F.R. Sec. 1477.5(a)(3) (1990), authorizes disaster payments to farmers if "[t]he county committee determines that because of an eligible disaster condition, producers on a farm were ... [p]revented from planting an eligible commodity." (emphasis added).
 
 
 18
 The county committee, responsible for carrying out federal farm subsidy programs locally, is "subject to the general direction and supervision of the State committee." 7 C.F.R. Sec. 7.21(a) (1990). As the regulations delegate authority to the state and county committees to determine which farmers were prevented from planting due to damaging weather, PAD-83 and PAD-95 are not plainly erroneous or inconsistent with the regulations. See Pyramid Lake Paiute Tribe, 882 F.2d at 369; Citizens for Clean Air v. EPA, 959 F.2d 839, 844 (9th Cir.1992).
 
 III. The Administrative Procedure Act
 
 19
 Appellants argue that PAD-83 and PAD-95 were issued in violation of the notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 553. The Secretary notes that the 1989 Act expressly exempted the Secretary from the requirements of Sec. 553 in issuing "regulations to implement this title." Pub.L. 101-82 Sec. 155.
 
 
 20
 The district court agreed with the Secretary, holding that PAD-83 and PAD-95 are implementing regulations, exempt from the requirements of Sec. 553. We agree that the PAD Notices are exempt from notice and comment requirements, but disagree with the district court's finding. PAD-83 and PAD-95 were certainly issued by the state committee to help the county committees implement the 1989 Act. However, they are not codified departmental regulations. Rather, they are an exercise of the discretion granted by existing departmental regulations to the state and local ASCS committees to determine which farmers are eligible for disaster payments. The PAD Notices were issued by the state committee to clarify for the county committees the meaning of the 1989 Act and its implementing regulations. As clarifying documents, the Notices are more appropriately characterized as interpretative rules or statements of policy, exempt from the APA's notice and comment requirements. See 5 U.S.C. Sec. 553(d)(2); Flagstaff Medical Center, Inc. v. Sullivan, 962 F.2d 879 (9th Cir.1992).[4]
 
 
 21
 IV. PAD-95 and the Fourteenth Amendment.
 
 
 22
 Appellants argue that PAD-95 denied them equal protection of the law because it caused them to be treated differently from dry land farmers in other states. See Plyler v. Doe, 457 U.S. 202, 216 (1982). Where an agency action, as here, affects only economic and not fundamental interests, the agency "is free to create any classification scheme that does not invidiously discriminate." Jackson Water Works, Inc. v. Public Utilities Comm'n, 793 F.2d 1090, 1093 (9th Cir.1986), cert. denied, 479 U.S. 1102 (1987). "The proper test for judging the constitutionality of statutes regulating economic activity challenged on equal protection grounds is whether the legislation bears a rational relationship to a legitimate state interest." Id. "All that is needed to uphold the state's classification scheme is to find that there are 'plausible,' 'arguable,' or 'conceivable' reasons which may have been the basis for the distinction." Id. at 1094 (citations omitted).
 
 Here, the district court found that
 
 23
 the only evidence plaintiffs presented is disaster relief given to three farms in North Dakota. Though the climates may be similar, the weather patterns are not identical and therefore the farmers are not similarly situated.
 
 
 24
 Even if the farmers were similarly situated, PAD-95 would meet the deferential standards of the rational basis test. The state committee's ruling was rational in view of its determination that any Washington farmer who had a sincere intent to plant in 1989 could have done so.
 
 
 25
 AFFIRMED. No party shall recover attorneys' fees in this Court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although this claim is not listed in the appellee's "Statement of Issues," it was argued by the Secretary before the district court and is raised in his brief on appeal. See Secretary's Br. at 10-11
 
 
 [2]
 See Dist. Ct. Order at 2 (ER Tab 4); Alvin Grant Pry Dep. at 30 (ER Tab 10)
 
 
 [3]
 The legislative history of the 1989 Act is rather unhelpful--the Senate Report, in its section-by-section analysis, merely parrots the statutory language. The Report states that disaster relief would be made available under Sec. 102(b), a parallel provision to Sec. 101(a) applicable to farmers who were not enrolled in the production adjustment program, to wheat and feed grain farmers who
 were prevented from planting because of excess moisture, freeze, storm, or related condition occurring in 1989 or drought or related condition occurring in 1988 or 1989, as determined by the Secretary.
 Senate Report No. 93, 101st Cong., 1 Sess. 13, reprinted in 1989 U.S.S.C.A.N. 514, 527 (emphasis added).
 
 
 [4]
 See also Alcaraz v. Block, 746 F.2d 593, 613 (9th Cir.1984) (discussing difference between substantive and interpretative rules)